32    269
99    520

32 269
e138 366

## LOUIS M. BEAUDRY *v.* JOSE M. VALDEZ.

PUBLIC STREETS OF OAKLAND.—The resolutions of the City Council of Oakland to improve the public streets and to accept bids to perform the work need not be approved by the Mayor.

IDEM.—Macadamizing the streets and curbing the sidewalks are made by statute distinct kinds of improvement in Oakland, and the former does not include the latter.

CONTRACT TO IMPROVE STREETS IN OAKLAND.—A contract in Oakland to improve a public street is valid only for such improvements as are named in the resolution of intention to improve, passed by the Common Council. If such resolution declares only an intention to macadamize, the contract should not be let for both macadamizing and curbing the sidewalk.

IDEM.—If the contract to improve a street in Oakland includes a kind of work not named in the resolution of intention, the contractor can recover for such work as is named in the resolution, if it can be separated from the other and estimated.

DUTY OF MAYOR OF OAKLAND.—The fact that the Mayor of Oakland, before his election, had become the assignee of a contract for the improvement of a street, as security for a debt due him by the contractor, does not affect the validity of the contract or of the assessment for the work, nor incapacitate him from countersigning the warrant for the collection of the assessment.

IDEM.—The act of the Mayor of Oakland in countersigning a warrant for the collection of an assessment for street improvements is purely ministerial.

APPEAL TO COMMON COUNCIL OF OAKLAND.—If there is any irregularity in the act of the Mayor of Oakland in countersigning a warrant for the collection of an assessment for a street improvement, such irregularity is waived by a failure to appeal from the act of the Mayor to the Common Council.

IDEM.—If there is any irregularity in the demand for the amount of an assessment for a street improvement in Oakland, or any defect in the assessment roll, the same is waived by a failure to appeal to the Common Council.

STREET ASSESSMENT COLLECTABLE IN GOLD COIN.—A tax due for an assessment

for improving a street in Oakland, may be assessed upon a gold basis and collected in gold coin.

JUDGMENT FOR STREET ASSESSMENT IN OAKLAND.—A personal judgment for the amount of an assessment for a street improvement in Oakland, should not be rendered against the defendant for a deficiency which may remain due after the enforcement of a lien on the lot.

APPEAL from the District Court, Third Judicial District, Alameda County.

When the plaintiff introduced the assessment roll in evidence the defendant's attorneys objected to its reception because "it was not made in accordance with the requirements of section eight of 'An Act to authorize the City Council of the City of Oakland to improve the streets, lanes, alleys, courts and places in said city,' approved April 4th, 1864; that the said pretended assessment does not show the name of the owner of each *lot*, or portions of a *lot;* nor the rate per front foot; nor does the diagram attached thereto show the relative locations of each *distinct lot*, or portion of a *lot*, to the work done; that said diagram of *lots* is not in accordance with the *lots* as known and designated upon the map and books of the Assessor of said city; nor such as have been universally recognized since the foundation of said city." The Court overruled the objection. The assessment roll contained several assessments against the defendant for curbing and macadamizing the crossings of different streets, all intersecting Broadway. The following is a copy of one. The others were in the same form:

ASSESSMENT FOR CURBING AND MACADAMIZING THE CROSSING OF BROADWAY AND SIXTH STREETS, AS PER ABOVE CONTRACT.

|  | Amount. |
|---|---|
| 7,737 square feet of macadamizing, @ 8½c | $657 64 |
| 121 4-12 lineal feet of curbs @ 20c | 24 27 |
|  | $681 91 |

NUMBER OF FRONT FEET ASSESSED, 1,000.
RATE PER FRONT FOOT, $0.68191.
Lots numbered and exhibited on the Diagram hereto attached.
All payable in United States gold coin.

| Nos. | Names of Owners. | Ft. Ft. | By whom Paid. | Amount. |
|------|------------------|---------|---------------|---------|
| 12 | F. Delger ..................................... | 175 | | $119 33 |
| 13 | Estate of J. Meyer........................ | 125 | | 85 24 |
| 14 | S. Adler..................................... | 50 | | 34 09 |
| 19 | J. M. Valdez................................ | 250 | | 170 48 |
| 20 | Mrs. Stewart................................ | 125 | Paid by C. Bagge.......................... | 85 24 |
| 21 | B. Bec........................................ | 25 | B. Bec paid................................. | 17 05 |
| 22 | J. Stewart................................... | 25 | Paid by C. Bagge.......................... | 17 05 |
| 48 | Estate of J. P. M. Davis............... | 75 | | 51 14 |
| 49 | B. Bec ....................................... | 50 | B. Bec paid................................. | 34 09 |
| 50 | S. Adler ..................................... | 25 | | 17 05 |
| 51 | R. Smith .................................... | 25 | | 17 05 |
| 52 | J. Stewart................................... | 25 | Paid by C. Bagge.......................... | 17 05 |
| 53 | J. Stewart................................... | 25 | Paid by C. Bagge.......................... | 17 05 |
| | | 1000 | | $681 91 |

The evidence showed that the land in the City of Oakland was divided into blocks and lots, and that a block fronting on Broadway street was two hundred feet front by three hundred feet deep, and that a lot fronting Broadway street was twenty-five feet front by seventy-five feet deep. The defendant claimed that there was no proof that any demand had been made on him for the amount due on the assessment.

The contract entered into by the City Marshal for performing the work, contained the following clause :

" The work to be done at the following prices, viz : macadamizing, twenty-two cents per square foot, in legal tenders ; curbing, fifty cents per lineal foot, in legal tenders ; or macadamizing at eight and a half cents per square foot, in gold coin of the United States of America ; for curbing, twenty cents per lineal foot, in gold coin of the United States of America."

The complaint asked for judgment for the amount specified in the contract in gold coin. The Court below gave judgment for plaintiff for the amount specified in the contract in gold coin, to be collected in that kind of money. The defendant appealed.

The other facts are stated in the opinion of the Court.

*John W. Dwinelle*, and *W. H. Glascock*, for Appellant.

The resolution of intention authorized the City Council to

macadamize the streets only, but not to curb the sidewalks. Macadamizing does not include curbing. The statute (Laws 1863–4, p. 333) speaks of macadamizing and curbing as two different things. The term macadamizing could not be nor was it enlarged by parol evidence, because macadamizing having a sense which is generally understood, parol evidence could not be introduced to entirely overturn that general sense, but only to show that it had another special meaning when applied to the transaction in hand. (1 Greenleaf on Evidence, p. 363, Sec. 280, and notes; 2 Phillips on Evidence, 4 Am. Ed., p. 709, and notes.) The warrant issued by the Marshal for the collection of the assessments, and countersigned by the Mayor, was void, because the Mayor was at the time the assignee of the contract for the street improvement. But the countersigning of said warrant by the Mayor was a judicial act, for before so countersigning it he was compelled to " examine the contract, the steps taken previous thereto, and the record of the assessments, and must be satisfied that the proceedings had been fair and legal." (Laws 1863–4, p. 337, Sec. 9.) So far then as the Mayor of Oakland, who was interested in this contract, is concerned, whilst it remained in his hands as assignee it was a void contract, or at least suspended *ad interim* in all its action and effect, and no official act of his could advance it a single step in the proceedings requisite for its collection. (*The Seneca County Bank* v. *Lamb*, 26 Barb. 595, and cases cited; *Barton* v. *Port Jackson P. Road Co.*, 17 Barb. 397; *Griffiths* v. *Wells*, 3 Denio, 226, and cases cited.)

The assessment roll was void, for the reason that it does not show the name of the owner of each lot or portion of a lot, nor the rate per front foot; nor does the diagram attached thereto show the relative locations of each distinct lot or portion of a lot to the work done; that said diagram of lots is not in accordance with the lots known and designated upon the map and books of the Assessor of said city; nor such as have been universally recognized since the foundation of said city. The law regulating these particulars is as follows:

" After the contractor of any street work has fulfilled his contract to the satisfaction of the Marshal of the said city, or City Council on appeal, the Marshal shall make an assessment to cover the sum due for the work performed and specified in said contract, (including incidental expenses, if any,) in conformity with the provisions of the preceding section, according to the character of the work done, or if any direction and decision shall be given by the said Council on appeal, then in conformity with such direction and decision, which assessment shall briefly refer to the contract, the work contracted for and performed, and shall show the amount to be paid therefor, together with the incidental expenses, if any, the rate per front foot assessed, the amount of each assessment, the name of the owner of *each lot or portion of lot* (if known to the Marshal ;) if unknown, the word ' unknown ' shall be written opposite *the number of the lot* and the amount assessed thereon, *the number of each lot or portion of a lot* assessed, and shall have attached thereto a diagram exhibiting each street or street crossing, lane, alley, place, or court on which any work has been done, and showing the *relative location of each distinct lot or portion of a lot* to the work done, numbered to correspond with the numbers in the assessments, and showing the number of feet fronting assessed for said work contracted for and performed."

We know of no law which authorizes a municipal corporation to make any discrimination in currency, or to make any contract which on its face shall impose upon the taxpayer or party assessed any pecuniary obligation which cannot be liquidated by payment in the legal currency of the country. But if the contract thus payable in the alternative in two different currencies was legal, then the party whose property was assessed was entitled to the benefit of the alternative, and to pay the assessment in that currency which should be the cheapest to him at the time of payment.

*Crane & Boyd*, for Respondent.

The use of the term " macadamized " in the resolution of intention, notified the property owners along the line of Broadway street that the Council proposed to contract for the doing of all those things which it was necessary to do, and which are ordinarily done, in order to properly macadamize a street. The resolution of intention is not for the purpose of giving all the *minutiæ* of the proposed improvement, but simply to indicate its general character, so that the property owner may object if he chooses. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 375.) We proved that custom, usage and common meaning includes in the term " macadamize " curbing also. The object of this proof was not to enlarge the sense of the term, but only to show what it meant and included when applied to the improvement of a street. (2 Parsons on Contracts, Sec. 9, p. 48, and notes.)

If the assessment was erroneously made up, and the appellant here so believed, he should have appealed to the Council. That body had jurisdiction of the subject matter, and full power to correct the assessment in any particular. His failure to appeal, we claim, estops him now from attacking the assessment in any way. (Laws 1863–4, p. 339; Charter of Oakland, Sec. 11; *Emery* v. *Bradford*, 29 Cal. 75.) The Mayor was only the assignee of the contract for collateral security, and became such assignee before he became Mayor. In this respect the facts differ from those in the cases cited by appellant. Here the contract in its inception was valid, and when it came to the hands of Ferris, by way of collateral security, it continued valid. It certainly did not become void when Ferris became Mayor. The act of the Mayor in countersigning the warrant is ministerial, because it is done not to determine any question as between two parties, but only to satisfy his own judgment whether or not he should countersign the warrant. It is no more judicial than the act of a Notary Public, who, before certifying to the acknowledgment of a deed, must be satisfied that the person is the party named in the deed. (*Lynch* v. *Livingston*, 2 Selden, 433; *McCauley* v. *Brooks*, 16 Cal. 41; *Middleton* v. *Low*, 30 Cal. 596. If the

assessment roll does not show the name of the owner of each lot, nor the relative location of each lot, it is not void, but only voidable on appeal by the property owner to the Common Council. (Laws 1863–4, p. 339, Sec. 11; *Bosworth* v. *Danzien*, 25 Cal. 296; *Bidleman* v. *Brooks*, 28 Cal. 72.

By the Court, SANDERSON, J.:

Action to recover an assessment levied for the improvement of Broadway street, in the City of Oakland.

I. The first point, to the effect that the City Council had not acquired jurisdiction of the subject matter at the time they ordered Broadway street to be improved, because the resolution of intention had not been presented to or approved by the Mayor of the city, is answered by the case of *Taylor* v. *Palmer*, 31 Cal. 240. Upon this point the statute under which the City of Oakland works when improving her streets is identical with that under which the City of San Francisco works, and which was before us in *Taylor* v. *Palmer*. (Statutes of 1863–4, p. 333, Sec. 3; 1862, p. 392, Sec. 4.) In that case we held that resolutions of intention to improve streets, passed by the Board of Supervisors of the City and County of San Francisco, need not be approved by the Mayor in order to become valid and vest the Board of Supervisors with jurisdiction to order the improvements.

II. The resolution of intention, and the resolution directing the improvement to be made, in terms, only provided for macadamizing the street. The contract for the improvement, and the assessment, both call for macadamizing the street and curbing the sidewalks. The contract price for macadamizing was twenty-two cents per square foot in legal tender notes, or eight and and a half cents in gold coin of the United States; and for curbing, fifty cents per lineal foot in legal tender notes, or twenty cents in gold coin of the United States. In view of these conditions it is claimed that the entire proceedings thereby became vitiated, and that no recovery can be had against the defendants.

To meet the point testimony was admitted by the Court, on the part of the plaintiff, to show that the word " macadamizing " represented a certain process of street improvement which, *ex vi termini*, included curbing of the sidewalks.

This was error. The question whether the term " macadamizing " also includes " curbing " is settled by the statute under which the parties having the matter in charge were working. The second section prescribes what street improvements the City Council shall have power to cause to be made. Each kind is separately named and described. " Macadamizing " is named as one, and " curbing " as another. Hence, whether the former might or might not, under other circumstances, include the latter, is not the question. Does it, within the meaning of the statute under which the parties were working is the question, and it is clear that it does not, for they are there mentioned as different and distinct kinds of street work, which circumstance shows that in the sense in which the former term is used in the statute it does not include the latter.

The passage and publication of the resolution of intention are the acts by which the City Council acquires jurisdiction ; and by those acts they acquire jurisdiction to make only such improvements as they describe in the resolution, and they cannot, therefore, lawfully cause work other than that which is described to be performed. But if they do, it does not necessarily follow that the entire proceedings are void. If the work described in the resolution can be separately traced through the entire proceedings, and does not become so mixed up with that which is not specified in the resolution as not to be distinguishable from it, the proceedings are valid as to the former and invalid only as to the latter. In the present case the cost of macadamizing and the cost of curbing can be readily distinguished and separated from each other ; and we therefore hold that the contract was a valid contract so far as it calls for macadamizing, and invalid only so far as it calls for curbing. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 379.)

III. The point to the effect that the resolution of the City

Council accepting the bid and directing the City Marshal to enter into a contract with the bidder was void because not approved by the Mayor, stands upon the same level with the point made against the validity of the resolution of intention, and admits of the same answer.

IV. It is next claimed that the warrant for the collection of the assessment issued by the Marshal and countersigned by the Mayor, was void because the Mayor was at the time the assignee of the contract, and therefore disqualified from acting in the premises.

The Mayor, prior to his election, had become the assignee of the contract as collateral security for the payment of a note which he held against the contractor for money loaned by the former to the latter to enable him to proceed with the work under the contract. In no other sense was he the assignee of the contract. He had nothing to do with the performance of the work, and under the assignment was only entitled to receive so much of the contract price as would be sufficient to pay his note. The city charter provides that : "No executive officer, nor member of the City Council, nor any officer of the corporation, shall be directly or indirectly interested, nor shall he be security for any person who may be so interested in any contract, work or business, or the sale of anything whatever, the expense, price or consideration of which is payable from the city treasury, or by assessment levied under any ordinance of the City Council."

Such are the conditions in view of which the point in hand is made.

The validity of the contract could not be affected by these conditions. The contract was made, and the Mayor's interest in it, such as it was, had vested in him before he became Mayor. The only effect then, in any event, would be to disqualify him from discharging the duties of Mayor so far as they might relate to the proceedings under this contract. Doubtless the more regular and proper course, under the circumstances, would have been for the City Council to have elected one of their number to discharge the duties of Mayor

in relation to these proceedings, which they might have done under the fourth section of the city charter, which, among other things, provides that " the Board shall elect a member from their own body to preside at the meetings and to discharge the duties of Mayor whenever there shall be a vacancy in the office of Mayor, or the Mayor shall be absent from the city, or be unable, from sickness or other cause, to attend to the duties of his office." But, be that as it may, we do not regard the act complained of as affecting the validity of the assessment. The act is a mere ministerial duty cast upon the Mayor. It is true that he is required to satisfy himself that the previous steps and proceedings have been fair and legal before countersigning the warrants. But suppose he should fail to do so, would the proceedings or the warrants thereby become worthless in law ? As remarked by counsel for respondent, the act is no more judicial than the act of a Notary Public who, before certifying to the acknowledgment of a deed, must be satisfied that the person making the acknowledgment is the party named in the deed; or of a County Clerk who, before issuing a writ of attachment, must be satisfied that the affidavit and undertaking are sufficient and in due form ; or of the same officer in entering a judgment where the defendant has made default; or of the Governor when he signs an Act of the Legislature and is required to see whether the forms of legislation have been observed. (*Lynch* v. *Livingston*, 2 Selden, 433 ; *McCauley* v. *Brooks*, 16 Cal. 11.) But independent of this, we are further of the opinion that the irregularity, if it is such, has been waived by a failure on the part of the defendants to appeal to the City Council as provided in section eleven of the statute. (*Emery* v. *Bradford*, 29 Cal. 75 ; *Taylor* v. *Palmer*, 31 Cal. 240.) If he was prejudiced in any way by reason of the assumed incompetency of the Mayor to act in the premises the City Council could have set the warrant aside and directed another to be made out and appointed some one of their number to look over the previous proceedings and countersign the warrant as Mayor *pro tem.*

What we have said under this point will also serve as an answer to the points made upon the proof of the demand for the amount of the assessment and upon defects alleged against the assessment roll. The latter could all have been remedied upon an appeal to the City Council, and if the defendant had any fault to find he should have availed himself of that remedy.

V. The next point relates to the kind of money which the plaintiff is entitled to recover.

The money sued for is a tax due to the city, and the plaintiff sues to recover it as the agent of the city. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 345 ; *Emery* v. *Bradford*, 29 Cal. 75 ; *Hendrick* v. *Crowley*, 31 Cal. 471.) All taxes and public dues, by express statutory provision, may be collected in coin. (2 Hittell, Arts. 6,500–6,502.) Hence the City Marshal had lawful authority to levy the assessment upon a gold basis, and to draw his warrant for coin, notwithstanding the contract was in the alternative.

VI. The last point relates to the judgment, which is in the same form as was used in *Taylor* v. *Palmer*. It was erroneous to render a personal judgment for the deficiency, if any, after a sale of the lots assessed, as we held in that case.

No new trial is necessary, except so far as to ascertain what portion of the amount sued for is for macadamizing the street. This can be ascertained by referring the matter to some competent person to make the computation, for which the assessment furnishes the necessary data. When that is ascertained, the plaintiff will be entitled to a judgment for that amount, and a lien upon the lots assessed, but not a judgment over.

Judgment reversed and cause remanded for further proceedings as suggested in this opinion.

Mr. Justice SHAFTER delivered the following opinion, concurring specially, in which Mr. Justice RHODES concurred :

I concur in the judgment and in all the conclusions arrived at on the points discussed in the opinion of Mr. Justice SAN-

DERSON, and, with one exception, I concur also in the grounds on which those conclusions are respectively put.

I do not consider that the Marshal's authority to make a gold assessment and to issue a warrant calling for gold had its source in the Act of 1864, requiring all dues to the public treasury of the State and of any city or county to be paid exclusively in the gold and silver coin of the United States. None of the dues named in the warrant could get into the municipal treasury, under any circumstances, as a place of lawful deposit. The contractor became and now is the city's agent to collect the assessments; and as fast as collected, the law has and will continue to apply them in his hands in payment of the debt which the city owes him. For this reason I consider that the Act of 1864 has no application to the question. On the other hand, the authority to assess and collect in coin, comes, in my judgment, of the right secured to the city by the contract of paying in currency at one rate, and in gold at a lower rate, in its election. It was lawful for the city to make this contract, and from that fact I deduce the power to assess and collect in gold.

Mr. Justice SAWYER did not express any opinion.