[Civ. No. 18844. Fourth Dist., Div. One. Mar. 6, 1980.]

CITY OF IMPERIAL BEACH, Plaintiff and Respondent, v.
GARY A. BAILEY et al., Defendants and Appellants.

COUNSEL

Floyd L. Morrow for Defendants and Appellants.

Jack F. Fitzmaurice, City Attorney, for Plaintiff and Respondent.

OPINION

HENDERSON, J.*—The City of Imperial Beach (City) filed a complaint for declaratory relief requesting a determination whether the city council (Council) could renew or extend a contract it had with Gary and Hazel Bailey doing business as Imperial Beach Concession (Concession). The court granted City's motion for summary judgment and ruled City could not contract with Concession.

*Assigned by the Chairperson of the Judicial Council.

*Factual Background*

In June 1963, City entered into a contract with Eva Herron for the construction and operation of a concession stand on the municipal pier for the purpose of selling bait, fishing tackle and refreshments. The term of the contract was for ten years with options for renewal by Concession for two additional terms of five years each. In July 1973, the Council amended the contract to approve Gary and Hazel Bailey as the operators of Concession pursuant to an assignment to them by Herron. The amendment also provided: "On the fifteenth anniversary of the agreement (June 26, 1978) ownership of the building shall pass to the City. OPERATOR agrees to execute all documents necessary to transfer the ownership of the building to the City. At the end of said fifteen year period CITY may reasonably adjust the rate of payment to be paid by OPERATOR to City to reflect the fact that City owns the building."

In November 1977, Hazel Bailey was elected to fill the unexpired term of a member of the Council. In March 1978 Hazel was reelected for a full four-year term. On March 31, 1978, Concession gave proper notice under the contract of its intent to exercise the option to renew. City refused to renew the contract relying on the provisions of Government Code section 1090 which provides in part: "[C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

When Concession continued to make demand that City negotiate a rate of payment and present an agreement renewing the contract, City filed its suit for declaratory relief.

Concession alleges the court in granting the summary judgment incorrectly concluded: (1) The exercise of the option would constitute the "making" of a contract in violation of Government Code section 1090; and (2) adjustment of the rate to be paid by Concession requires a "negotiation" prohibited by Government Code section 1090.

Concession also contends the court should have required City to make a rate adjustment prior to a determination whether the renewal process constitutes a contract.

We address Concession's arguments concomitantly as the separate issues overlap with the broad issue whether a renewal of the contract would violate section 1090.

Concession suggests the contract can remain in force without any participation on its part as to the adjustment of the rate to be paid City. It bases this argument on the theories City can make a unilateral decision on the amount to be paid or, if City refuses to do so, a court of equity can set the rate since the amount to be paid is not an essential element of the contract. As such, Concession contends the adjustment does not require "a negotiation."

Concession's proposal City can unilaterally set the rate misinterprets the import of section 1090. Assuming City sets the rate unilaterally, the Council must still approve it. Since Hazel is a member of the Council, this is prohibited by section 1090, even if she abstains from voting. It is not her participation in the voting which constitutes the conflict of interest, but her potential to do so (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211 [137 Cal.Rptr. 118]).

Concession relies on *Chaney* v. *Schneider* (1949) 92 Cal.App.2d 88 [206 P.2d 669], for the proposition a court of equity will set the rate if City refuses to do so. In *Schneider* the court said at page 89: "Leases which left anything for future agreement of the parties were for a long time generally held to be void for uncertainty. The modern trend of decisions would seem to be in relaxation of the strictness of the rule, particularly when the amount of rental is left to future agreement. If there is in the writing a sufficient definite standard or method for the determination of the rental, and if the amount thereof is the only thing to be determined, courts of equity will hold that the parties agreed upon a reasonable rental for the extension, and will declare it if they do not agree. [Citations.]"

Concession's reliance on *Schneider* is misplaced. In the contract between City and Concession there is no standard or method for the determination of the rental. The entire recital is this regard is the amendment previously quoted. ■ The trial court was correct in not requiring City to make a unilateral rate adjustment and it correctly ruled the rate adjustment in question required a "negotiation."

 Concession's argument a renewal of the option is not a "making" of a contract also is contrary to the law under the facts of this case. Concession relies on *Beaudry* v. *Valdez* (1867) 32 Cal. 269, where a contractor assigned a part interest in his city contract as a collateral for a loan. The note holder later was elected mayor of the city and it was alleged he could not sign the warrants for the contractor's pay because of the interest he had in the contract. Concession emphasizes the language from page 277: "The Mayor's interest in [the contract],... had vested in him before he became Mayor." However, as *Beaudry* points out, the mayor in no sense was an "assignee" of the contract other than collecting payment on his previous loan. The mayor did not perform the work and his act of signing the warrant was a mere ministerial duty. We conclude *Beaudry* does not apply to Concession, the assignee of a contract, which charges Concession with its full performance. Whether the right to exercise the option vested prior to Hazel's election to the Council, the fact still remains to exercise the option at the present time Hazel, as a Council member, would have to affirm the contract and determine the new monthly rate. This she cannot do under section 1090. Further, the final execution of the contract and its affirmation by the Council would not be the only time when a conflict of interest may be presented. This court had occasion previously to resolve whether the City of San Diego could contract for the development of a Japanese garden in Balboa Park with a landscape architectural firm whose president was a member of the park and recreation board. In holding that such a contract would violate San Diego City Charter (§ 94) and Government Code section 1090, we pointed out: "...the negotiations, discussions, reasoning, planning, and give and take which go beforehand in the making of a decision to commit oneself must all be deemed to be a part of the making of an agreement in the broad sense [citation].....If the date of final execution were the only time at which a conflict might occur, a city councilman could do all the work negotiating and effecting a final contract which would be available only to himself and then present the matter to the council, resigning his office immediately before the contract was executed. He would reap the benefits of his work without being on the council when the final act was completed. This is not the spirit nor the intent of the law which precludes an officer from involving himself in the making of a contract. The statutes are concerned with any interest, other than perhaps a remote or minimal interest, which would prevent the officials involved from exercising absolute loyalty and undivided allegiance to the best interests of the city [citation]." (*City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 212 [145 Cal.Rptr. 461].)

In the present case, as was the case in *City Council* v. *McKinley, supra*, it is conceded Hazel Bailey's integrity is above reproach and we sympathize with her position of having to choose between remaining on the Council or continuing as owner of Concession. ■ However, the purpose of Government Code section 1090 is not only to strike at actual impropriety, but also to strike at the appearance of impropriety. Thus we emphasized in *City Council* v. *McKinley, supra* (*id.* at p. 213): "The public policy supporting this position [Gov. Code, § 1090] stems from the fact a public office is a public trust created in the interest and for the benefit of the people. Public officers are obligated to discharge their responsibilities with integrity and fidelity. The law of this state is that public officers shall not have a personal interest in any contract made in their official capacity.... [T]he established policy of this state in this regard [was] created to remove all indirect as well as direct influence of an interested officer in the discharge of his duties. This is not intended to strike only at fraud or dishonesty and it is conceded none exists in the present case; the object of the enactment is to remove or limit the possibility of any personal influence either directly or indirectly which might bear on an official's decision as well as to void contracts which are actually obtained through fraud or dishonest conduct [citations]."

■ We conclude the trial court properly found that the exercise of the option to renew Concessions's contract was a "making" of a contract prohibited by Government Code section 1090 as long as Hazel Bailey is a member of the Council.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

A petition for a rehearing was denied March 27, 1980.