TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1203 |
| of | : | |
| | : | March 20, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DAVID G. KELLEY, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

With respect to a real property lease and water purchase agreement between a city and a general partnership which requires renegotiation of the rental rate and water fees every five years in accordance with guidelines specified in the agreement, and a general partner is thereafter elected to the city council, may the city council at the end of a five-year period (1) approve a change in the rent and fees, (2) allow the rent and fee changes to be decided by a third-party arbitrator in accordance with an arbitration clause contained in the agreement, (3) allow the agreement to remain in effect with the previously set rent and fees, or (4) upon transfer of the council member's proscribed interest to another general partner, family member, unrelated third person, or trust, approve a change in the rent and fees?

CONCLUSION

With respect to a real property lease and water purchase agreement between a city and a general partnership which requires renegotiation of the rental rate and water fees every five years in accordance with guidelines specified in the agreement, and a general partner is thereafter elected to the city council, the city council at the end of a five-year period (1) may not approve a change in the rent or fees, (2) may not allow the rent or fee changes to be decided by a third-party arbitrator in accordance with an arbitration clause contained in the agreement, (3) may not allow the agreement to remain in effect with the previously set rent and fees, but (4) may approve a change in the rent and fees upon transfer of the council member's proscribed interest to another general partner, family member, unrelated third person, or trust.

ANALYSIS

With few exceptions, a city may not enter into a contract with a private entity that is owned by a member of the city council. Government Code section 1090 **Footnote No. 1** provides in relevant part:

". . . [C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

The purpose of this statutory prohibition, applicable to most state and local officers and employees, "is to remove or limit the *possibility* of any personal influence, either directly or indirectly, which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. . . ." (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.) The aim of the statute is "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (*City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197.) Section 1090's prohibition applies even though the contract may be fair and equitable (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 646-649) and the affected official would agree to abstain from participating in the decision-making process (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211-212).

We are asked what effect, if any, the terms of section 1090 would have upon the renegotiation of a contract that was originally executed prior to the election of the city council member with the proscribed financial interest, where the contract itself requires periodic renegotiation. In the situation to be analyzed, a city has leased city property to a general partnership for farmland and has agreed to furnish the partnership with treated wastewater from the city's treatment plant. The agreement states that the parties will renegotiate the rental amount and fees for water at the end of every five-year period. If the parties are unable to agree, the agreement calls for the joint selection of an arbitrator who will make a final decision as to the amount of the rental and fees. Prior to commencement of another five-year period, one of the general partners is elected to the city council. How is section 1090 to be applied in such circumstances?

1.    *Approving the New Rental Rate and Water Fees*

We are first asked whether the city council's approval of a change in the rent and water fees would constitute the "making of a contract" for the purposes of section 1090, when the renegotiation of the rent and fees is required by the agreement executed prior to when the general partner became a member of the city council. We conclude that approval of a new rental rate and fees constitutes the making of a contract and would thus be prohibited. **Footnote No. 2**

While section 1090 refers to a contract being "made," the term has been expansively interpreted by the courts to include "such embodiments in the making of a contract as preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and solicitation for bids." (*Millbrae Assn. For Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 237; *People* v. *Vallerga* (1977) 67 Cal.App.3d 847, 868.)

The facts presented here are similar to those involved in *City of Imperial Beach* v. *Bailey, supra,* 103 Cal.App.3d 191. In *Imperial Beach* a city executed a contract for construction of a building and the operation of a concession on a municipal pier. The contract term was for 10 years, with the concessionaire having an option to renew for two additional five-year periods. During the first option period, the concessionaire was elected to the city council. The court ruled that the contract's second renewal option could not be exercised since the concessionaire was now a member of the city council. (*Id.,* at p. 197.) The court noted:

". . . [Concessionaire's] argument that a renewal of the option is not a 'making' of a contract . . . is contrary to the law under the facts of this case. . . . Whether the right to exercise the option vested prior to [Concessionaire's] election to the Council, the fact still remains to exercise the option at the present time [Concessionaire], as a Council member, would have to affirm the contract and determine the new monthly rate. This she cannot do under section 1090." (*Id.*, at p. 196.)

The court's reasoning in *Imperial Beach* is applicable to the specified renegotiation of the contract between the city and the partnership. Even though the original contract contains guidelines for establishing the rental rates and water fees for each subsequent five-year period, negotiation of the actual amounts would both constitute the "making" of a contract and present, at the least, the appearance of a conflict of interest that section 1090 prohibits. Hence, such renegotiation would be impermissible under the statute.

2.      *Allowing an Arbitrator to Decide*

The agreement in question provides that if the parties are unable to agree on a new rental rate or water fees, they are to select an arbitrator to make a final decision as to the appropriate sums. We conclude that the city may not exercise the "arbitration clause" without violating the proscriptions of section 1090.

If an arbitrator were to set the amounts, the city would still be required to take *some* action to permit the arbitrator to act. As previously noted, it is not merely the signing of a document that constitutes the making of a contract for purposes of section 1090; the entire process leading to the contract's execution, including discussions and planning, is subject to the prohibition. Obviously the city cannot make the election to exercise the arbitration clause without some discussion or a vote, and deciding to send the matter to arbitration necessarily requires the city to affirm the contract. As we stated in 76 Ops.Cal.Atty.Gen., *supra*, 121:

". . . Whether the renewal involves the renegotiation of the contract or a mere affirmation thereof, the potential for [a party to the contract] to participate in the voting on the renewal constitutes the conflict of interest."

Any city determination to extend the contract, whether by renegotiation or allowing the new payment schedules to be set by an arbitrator, would violate the public policy purposes underlying section 1090. The determination to have the agreement terms submitted to arbitration cannot be separated from the rest of the transaction and would result in a continuation of the contract in which a council member has a direct financial interest. (See *Thomson* v. *Call, supra,* 38 Cal.3d

633.) Accordingly, the city may not exercise the "arbitration clause" without violating section 1090 in the described circumstances.

### 3.    *Forgoing Renegotiation*

The agreement between the city and the partnership calls for renegotiation of the payment schedules at five-year intervals. If the city were to decide not to participate in renegotiations and forgo any increases in the rental and water rates, would the city's decision constitute a proscribed extension of the current contract? We conclude that the extended agreement would constitute a new contract, with the old payment terms, in violation of section 1090.

The decision not to renegotiate the payment terms has the same effect as renegotiating and agreeing to keep the existing payment terms unchanged. A determination not to renegotiate is the equivalent of establishing the rates for the new period and therefore constitutes the "making" of a contract. As stated by the court in *Imperial Beach v. Bailey, supra,* 103 Cal.App.3d at 195, in rejecting the suggestion that the unilateral setting of a rental rate by the city could avoid the section 1090 prohibition:

". . . Assuming City sets the rate unilaterally, the Council must still approve it. Since [concessionaire] is a member of the Council, this is prohibited by section 1090, even if she abstains from voting. It is not her participation in the voting which constitutes the conflict of interest, but her potential to do so."

In the circumstances presented for our analysis, the city may not forgo the right to renegotiate and keep the current terms in force without violating the provisions of section 1090.

### 4.    *Transferring the Partnership Interest*

The execution of contracts that are prohibited by section 1090 are those in which a government official has a financial interest. We have no doubt that the council member here may terminate his proscribed financial interest by transferring his partnership interest to someone else. In *Imperial Beach v. Bailey, supra,* 103 Cal.App.3d at 197, the court noted that the concessionaire had a choice between remaining on the city council or continuing her ownership of the concession. Simply put, if the city council member in question divests himself of his financial interest, the proscription of section 1090 will not bar renegotiation of the rental rate and water fees. (See 28 Ops.Cal.Atty.Gen. 168 (1956); 21 Ops.Cal.Atty.Gen. 228 (1953).)

Of course, there must be a bona fide transfer that leaves the city council member without any proscribed financial interest. A transfer that allows the member to retain a financial benefit from the contract would not constitute the necessary divestiture to avoid section 1090's prohibition.

We conclude in answer to the question presented that with respect to a real property lease and water purchase agreement between a city and a general partnership which requires renegotiation of the rental rate and water fees every five years in accordance with guidelines specified in the agreement, and a general partner is thereafter elected to the city council, the city

council at the end of a five-year period (1) may not approve a change in the rent or fees, (2) may not allow the rent or fee changes to be decided by a third-party arbitrator in accordance with arbitration clause contained in the agreement, (3) may not allow the agreement to remain in effect with the previously set rent and fees, but (4) may approve a change in the rent and fees upon transfer of the council member's proscribed interest to another general partner, family member, unrelated third party, or trust.

*  *  *  *  *

**Footnote No. 1**
Undesignated statutory references hereafter will be to the Government Code.
**Footnote No. 2**
Because the council member with the proscribed financial interest is a general partner of the contracting entity, the exceptions from the statutory prohibition for certain "remote interests" (§ 1091) and "non-interests" (§ 1091.5) are inapplicable. (See *Citizens Advocates, Inc.* v. *Board of Supervisors* (1983) 146 Cal.App.3d 171, 178-179; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte, supra,* 68 Cal.App.3d at 211-212; 67 Ops.Cal.Atty.Gen. 369, 375 (1984).) Moreover, we have not been advised of any facts that would invoke the "rule of necessity" which would permit renegotiation of the contract; the agreement in question does not involve an essential public service or the exercise of a power that only the city council member may legally perform. (See *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311; 80 Ops.Cal.Atty.Gen. 335 (1997); 76 Ops.Cal.Atty.Gen. 118 (1993); 65 Ops.Cal.Atty.Gen. 305 (1982).)