TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 98-604 |
| of | : | |
| | : | November 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DION LOUISE ARONER, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a probationary teacher for the 1997-1998 school year be employed by the school district as a probationary teacher for the 1998-1999 school year and as a permanent teacher for the 1999-2000 school year if the teacher's spouse became a school board member during the 1997-1998 school year?

CONCLUSION

A probationary teacher for the 1997-1998 school year may not be employed by the school district as a probationary teacher for the 1998-1999 school year or as a permanent teacher for the 1999-2000 school year if the teacher's spouse became a school board member during the 1997-1998 school year.

ANALYSIS

Government Code section 1090 **Footnote No. 1** provides:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."

Under the provisions of section 1090, a school board member would have a "financial interest" in his wife's contract as a teacher employed by the school district. (69 Ops.Cal.Atty.Gen. 102, 105-107 (1986).) The question we have been asked to address is whether a probationary teacher may continue as a probationary teacher and become a permanent teacher if her spouse is a member of the school board. In the circumstances we have been given, we conclude that the school district may not enter into any new contracts with the probationary teacher.

The teacher in question was a probationary teacher for the 1997-1998 school year when her spouse became a school board member in 1997. She already had a contract with the district when her spouse became subject to the prohibition of section 1090. Hence, the statute would not apply to her employment by the district for the 1997-1998 school year. (See *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 196-197.)

For the 1998-1999 school year, however, a new contract would be required. That contract would be prohibited under the terms of section 1090 unless it represented what the Legislature has deemed a "remote interest" (§ 1091) or a "noninterest" (§ 1091.5) for the school board member spouse. (See 81 Ops.Cal.Atty.Gen. 169, 172 (1998); 80 Ops.Cal.Atty.Gen. 320, 321 (1997).) The only exemption from section 1090's prohibition requiring our analysis here is the "noninterest" provision of subdivision (a)(6) of section 1091.5:

"(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.

"(6) That of a spouse of an officer or employee of a public agency in his or her spouse's employment or officeholding if his or her spouse's employment or officeholding has existed for at least one year prior to his or her election or appointment."

Here, we are given that the probationary teacher was hired by the school district for the 1997-1998 school year within six months of when her spouse became a school board member in 1997. Accordingly, subdivision (a)(6) of section 1091.5 would be inapplicable due to its one-year qualification period. (See 80 Ops.Cal.Atty.Gen., *supra*, at 322; 69 Ops.Cal.Atty.Gen., *supra*, at 112.)

No other statute exempts the application of section 1090 in the present circumstances. The school district may not employ the probationary teacher for the 1998-1999 or 1999-2000 school year while her husband is a member of the school board. (81 Ops.Cal.Atty.Gen., *supra*, at 135-139; 80 Ops.Cal.Atty.Gen., *supra*, at 321-322.) **Footnote No. 2**

We reject the suggestion that the terms of section 1090 may be ignored if the school board chooses to "do nothing" and thereby allow the probationary teacher to continue for the 1998-1999 school year and become a permanent teacher for the 1999-2000 school year. Education Code section 44840 provides:

"Persons in positions requiring certification qualifications may be elected for the next ensuing school year on and after the 15th day of March, and each person so elected shall be deemed reelected from year to year . . . ."

Education Code section 44929.21, subdivision (b) provides:

"Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position

or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year. This subdivision shall apply only to probationary employees whose probationary period commenced during the 1983-84 fiscal year or any fiscal year thereafter."

Under the terms of Education Code sections 44840 and 44929.21, the probationary teacher in question could become a probationary teacher for the 1998-1999 school year and a permanent teacher for the 1999-2000 school year if "the governing board does not give notice" of nonreelection--and section 1090 were inapplicable. (See *Peralta Federation of Teachers* v. *Peralta Community College Dist.* (1979) 24 Cal.3d 369, 387; *Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316, 333-334; *Jensen* v. *Board of Trustees* (1974) 43 Cal.App.3d 945, 948; *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112, 118; *LaRue* v. *Board of Trustees* (1940) 40 Cal.App.2d 287, 293; *Hogsett* v. *Beverly Hills School Dist.* (1936) 11 Cal.App.2d 328, 332-333.)

However, section 1090 is not inapplicable. Irrespective of the Education Code provisions making further employment by "operation of law" rather than by affirmative action of the governing board, were the teacher-spouse herein to continue an additional year as a probationary teacher and then become a tenured teacher, *two new contracts would be involved between her and the school district* for the two years. The Education Code in no way nullifies the fact that "[t]he relationship between [a] . . . teacher and a school board is contractual." (39 Ops.Cal.Atty.Gen. 33, 36 (1962).) Even when a teacher's contract is renewed by operation of law, a contract results from the governing board's decision not to act.

What, then, would be the effect of the school board deciding to take no action with respect to the spouse-teacher? Initially, we note that Education Code section 44929.21, subdivision (b) directs the board to take action: "The governing board shall notify the employee, on or before March 15 . . . of the decision to reelect or not reelect the employee for the next succeeding school year." We believe that a decision not to act under the Education Code provisions constitutes the making of a contract for purposes of section 1090. We do not read the Education Code statutes in isolation, but rather must construe them in the context of section 1090 (see *California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642; *State Farm Mut. Auto. Ins. Co.* v. *Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1082) and its policy of prohibiting possible conflicts of interest (see *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569; *City of Imperial Beach* v. *Bailey*, *supra*, 103 Cal.App.3d at 197; 81 Ops.Cal.Atty.Gen., *supra*, at 170-171).

In 81 Ops.Cal.Atty.Gen., *supra*, 134, we recently considered whether a real property lease and water purchase agreement between a city and a general partnership, where one of the general partners was subsequently elected to the city council, could be extended by the parties at the same terms without taking any formal action. We stated:

"The agreement between the city and the partnership calls for renegotiation of the payment schedules at five-year intervals. If the city were to decide not to participate in renegotiations and forgo any increases in the rental and water rates, would the city's decision constitute a proscribed extension of the current contract? We conclude that the extended agreement would constitute a new contract, with the old payment terms, in violation of section 1090.

"The decision not to renegotiate the payment terms has the same effect as renegotiating and agreeing to keep the existing payment terms unchanged. A determination not to renegotiate is the equivalent of establishing the rates for the new period and therefore constitutes the 'making' of a contract. . . ." (*Id.*, at pp. 137-138.)

Similarly, here, the decision of the school board to refuse to act in hiring the probationary teacher for the school years 1998-1999 and 1999-2000, resulting in her employment for the two years by operation of law, would constitute the making of a contract in violation of section 1090. A decision not to act constitutes a decision to employ, resulting in a contract that section 1090 proscribes.

We conclude that a probationary teacher for the 1997-1998 school year may not be employed by the school district as a probationary teacher for the 1998-1999 school year or as a permanent teacher for the 1999-2000 school year if the teacher's spouse became a school board member during the 1997-1998 school year.

* * * * *

**Footnote No. 1**
All references hereafter to the Government Code are be section number only.

**Footnote No. 2**
No facts have been presented that would involve the "rule of necessity" involving either the performance of an essential public service or the exercise of a power that only the public official in question may legally perform. (See *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311; 81 Ops.Cal.Atty.Gen., *supra*, at 136, fn. 2.)