BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE BONNIE GARCIA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a hospital district board of directors enter into a lease agreement with a healthcare district director if the healthcare district board of directors is required to approve the agreement under the terms of a separate lease between the hospital district and the healthcare district?
 CONCLUSION
A hospital district board of directors may not enter into a lease agreement with a healthcare district director if the healthcare district board of directors is required to approve the agreement under the terms of a separate lease between the hospital district and the healthcare district.
 ANALYSIS
We are informed that a hospital district ("HD") has recently leased part of one of its facilities to a healthcare district ("HCD") for the operation of a rural health clinic.[1] More than half of the facility will be used by the HCD; the remaining space in the facility will be leased to other parties. A member of the HCD board of directors, who owns and operates a home health care business, is considering whether to rent space in the facility. The operation of her home health care business would not be in competition with the health care services available in the HCD's clinic.
We are asked whether the HD board may lease part of its facility to the HCD director where the HCD board is required to approve the lease under the terms of its own lease with the HD board. We conclude that the HD board may not execute a lease with the HCD director due to the director's conflict of interest.
Government Code section 1090[2] provides in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
A director of a health care district is covered by section 1090's prohibition. (See Eldridge v. Sierra View Local Hospital District (1990) 224 Cal.App.3d 311, 320; 75 Ops.Cal.Atty.Gen., supra, at p. 23.)[3] Here, the HCD director would not only have a financial interest in the lease as the lessee of the property but also would be called upon to approve the lease as a member of the HCD board.
Section 1090 is concerned with financial interests, other than remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their agencies. (See Stigall v. City of Taft (1962) 58 Cal.2d 565, 569.)[4] The statute is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of Imperial Beach v. Bailey (1980) 103 Cal.App.3d 191, 197.) When section 1090 is applicable to one member of the governing body of a public entity, the prohibition cannot be avoided by having the interested board member abstain; the entire governing body is precluded from entering into the contract. (Thomson v. Call (1985)38 Cal.3d 633, 647-649; Stigall v. City of Taft, supra, 58 Cal.2d at p. 569; City of Imperial Beach v. Bailey, supra, 103 Cal.App.3d at p. 197; 86 Ops.Cal.Atty.Gen. 138, 139 (2003); 70 Ops.Cal.Atty.Gen. 45, 48 (1987).) A contract which violates section 1090 is void. (Thomson v. Call, supra, 38 Cal.3d at p. 646.) The prohibition applies regardless of whether the terms of the contract are fair and equitable to all parties. (Id., at pp. 646-649.)
The critical issue to be resolved is whether the HCD board member, in her official capacity, would be "making" the lease for purposes of section 1090 even though only the HD board would be executing the agreement. (See Millbrae Assn. for Residential Survival v. City of Millbrae (1968) 262 Cal.App.2d 222, 237; 75 Ops.Cal.Atty.Gen., supra, at p. 23; 66 Ops.Cal.Atty.Gen. 156, 160-161 (1983).)[5] Although the HCD board would not be a "party" to the HCD director's lease agreement, would the HCD board nevertheless be charged with participating in the lease's "making"?
Pursuant to the lease agreement between the HD board and the HCD board, the approval of the HCD board is required for any lease of the remaining space in the HD facility. Such approval would involve the HCD board in the "making" of the lease for purposes of section 1090. (See 81 Ops.Cal.Atty.Gen. 134, 135-137 (1998); 75 Ops.Cal.Atty.Gen., supra, at p. 23.) We analyzed the governing principles in 77 Ops.Cal.Atty.Gen. 112 (1994), where we applied section 1090 to a city airport commission's execution of a contract for the construction of an airport terminal. The contract required the design of the terminal to be approved by the city art commission, one of whose members was a principal in the firm that had been awarded the contract. We stated:
 "While the commissioner would clearly have a financial interest, the question remains whether the contract would be `made' by him as a member of the art commission for purposes of section 1090. If the contract for the design were examined in isolation up to the time of its award, we might conclude that the commissioner would not be in violation of the statute. The contract would only be `made' by the airports commission, the awarding body. Such an approach, however, is neither realistic nor in accord with the case law. The `making' of a contract within the meaning of section 1090 is not to be given a hypertechnical meaning; all the facts and circumstances surrounding the contract are to be examined. Essentially, if it is determined that an official participated in the transaction, taken in its totality, and it would or potentially could affect his personal financial interests, then the official would fall within the section 1090 proscription. (See Thomson v. Call, supra, 38 Cal.3d 633, 647-649.)
 "Here, the approval of the design services by the art commission is part of the original contract. The transaction may not be segmented into two steps. Although the contract was awarded by the airports commission, it was not merely for a design, but for a satisfactory design. The art commission will in essence determine the ultimate terms and conditions of the contract, that is, what constitutes a satisfactory design. As such, art commission members may be said to be participants in the making of the contract.
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "In sum, the basic transaction here is the submission by the architectural firm of a satisfactory design for a new airport terminal. The commissioner in question will participate in the transaction through his commission's review and approval of the design. To conclude otherwise would give section 1090 a strict, hypertechnical construction which would be contrary to the consistent and longstanding approach taken by the courts and this office. . . ." (Id. at pp. 116-117.)
Likewise, here, the approval of the lease agreement by the HCD board would be an essential part of the "making" of the lease between the HD board and the HCD director. As previously noted, section 1090's prohibition cannot be avoided even if the official with the financial interest agreed to abstain from participating in the decision-making process. (Fraser-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201, 211-212; 78 Ops.Cal.Atty.Gen. 362, 368 (1995).)
We thus conclude that a hospital district board of directors may not enter into a lease with a healthcare district director if the healthcare district board of directors is required to approve the agreement under the terms of a separate lease between the hospital district and the healthcare district.
[1] Health care districts and hospital districts are governed by The Local Health Care District Law (Health Saf. Code, §§ 32000-32492). They are treated as equivalent entities (Health 
Saf. Code, §§ 32000, 32000.1, subd. (a)) and have the power to execute leases of property located both within and outside their territories as well as to establish, maintain, and operate health care facilities (Health Saf. Code, § 32121, subds. (c), (j); see 75 Ops.Cal.Atty.Gen. 20, 21-22 (1992)).
[2] All section references are to the Government Code unless otherwise indicated.
[3] Section 1090 is inapplicable to hospital and health care district officers under certain conditions set forth in Health and Safety Code section 32111. As these conditions concern district officers who are professional staff members, we do not find them relevant here.
[4] Provisions relating to "remote interests" (§ 1091) and "non-interests" (§ 1091.5) are not germane to the proposed agreement with which we are concerned.
[5] Of course, if an official is a member of a board that actually executes the contract, he or she is conclusively presumed to have been involved in its making. (Thompson v. Call, supra, 38 Cal.3d at p. 649.)