TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-110 |
| of | : | |
| | : | July 27, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAMES L. MARKMAN, CITY PROSECUTING ATTORNEY, CITY OF BREA, has requested an opinion on the following question:

May a city council enter into a development agreement with a land developer if one of the council members is married to an attorney whose law firm represents the developer concerning matters unrelated to the proposed development?

CONCLUSION

A city council may enter into a development agreement with a land developer if one of the council members is married to an attorney whose law firm represents the developer concerning matters unrelated to the proposed development, as long as the council member discloses the interest to the council, such interest is noted in the council's official records, and the member does not participate in negotiating or voting upon the agreement.

ANALYSIS

Government Code section 1090[1] provides:

_____

[1]All section references are to the Government Code unless otherwise indicated.

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."

We are asked to determine whether the prohibition contained in section 1090 would apply to the execution of a "development agreement" (§§ 65864-65869.5) by a city council and a land developer where one of the council members is married to an attorney whose law firm represents the developer in matters unrelated to the proposed development. Two legal issues are presented: (1) is a development agreement a "contract" within the meaning of section 1090, and if so, (2) would the council member have only a "remote interest" (§ 1091) so as to allow execution of the agreement by the council?

1. Existence of a "Contract"

The first issue to be resolved is whether a development agreement constitutes a "contract" for purposes of section 1090. We conclude that it does.

In 1979 the Legislature enacted sections 65864-65869.5, authorizing cities and counties to enter into development agreements with land developers. The legislation was intended to address the situation presented in *Avco Community Developers, Inc.* v. *South Coast Regional Commission* (1976) 17 Cal.3d 785 and its progeny, such as *Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965. These cases applied the general rule that a land developer does not acquire a "vested right" to complete a proposed project until such time as a final building permit has been issued and the developer has performed substantial work in reliance upon the permit. Hence, under the general rule a developer could become involved in detailed planning and other matters and yet find himself unable to complete the project because of changes in local regulations or approvals. (See *City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1189-1194; Nadel, *This Land Is Your Land . . . Or Is It? Making Sense Of Vested Rights In California* (1989) 22 Loyola L.A. L.Rev. 791; Sigg, *California's Development Agreement Statute* (1985) 15 Sw.U.L.Rev. 695.) The Legislature authorized the use of development agreements to bring certainty to the planning of projects at an earlier stage than possible under the general rule.

This purpose is expressed by the Legislature in its declarations and findings, set forth as follows in section 65864:

"(a) The lack of certainty in the approval of development projects can result in a waste of resources, escalate the cost of housing and other development to the consumer, and discourage investment in and commitment to comprehensive planning which would make maximum efficient utilization of resources at the least economic cost to the public.

"(b) Assurance to the applicant for a development project that upon approval of the project, the applicant may proceed with the project in accordance with existing policies, rules and regulations, and subject to conditions of approval, will strengthen the public planning process, encourage private participation in comprehensive planning, and reduce the economic costs of development.

"(c) The lack of public facilities, including, but not limited to, street, sewerage, transportation, drinking water, school and utility facilities, is a serious impediment to the development of new housing. Whenever possible, applicants and local governments may include provisions in agreements whereby applicants are reimbursed over time for financing public facilities."

With respect to the terms of a development agreement, section 65865.2 provides:

"A development agreement shall specify the duration of the agreement, the permitted uses of the property, the density or intensity of use, the maximum height and size of proposed buildings, and provisions for reservation or dedication of land for public purposes. The development agreement may include conditions, terms, restrictions, and requirements for subsequent discretionary actions, provided that such conditions, terms, restrictions, and requirements for subsequent discretionary actions shall not prevent development of the land for the uses and to the density or intensity of development set forth in the agreement. The agreement may provide that construction shall be commenced within a specified time and that the project or any phase thereof be completed within a specified time.

"The agreement may also include terms and conditions relating to applicant financing of necessary public facilities and subsequent reimbursement over time."

Development agreements may be enforced as specified in section 65865.4:

"Unless amended or canceled pursuant to Section 65868, or modified or suspended pursuant to Section 65869.5, and except as otherwise provided in subdivision (b) of Section 65865.3, a development agreement shall be enforceable by any party thereto notwithstanding any change in any applicable general or specific plan, zoning, subdivision, or building regulation adopted by the city, county, or city and county entering the agreement, which alters or amends the rules, regulations, or policies specified in Section 65866."[2]

In examining whether a development agreement constitutes a "contract" for purposes of section 1090, we first note the Legislature's fundamental goals in enacting the statutory prohibition against the holding of financial interests in government contracts. In 66 Ops.Cal.Atty.Gen. 152, 156-157 (1983), we observed:

"Section 1090 of the Government Code codifies the common law prohibition and the general policy of this state against public officials having a personal interest in

---

[2]Section 65868 authorizes the mutual modification or cancellation of an agreement. Section 65869.5 provides for possible changes in state or federal law which could affect an agreement. Section 65865.3, subdivision (b) refers to certain matters when there is an annexation of territory.

contracts they make in their official capacities. (*Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 206; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 289; *Stockton P. & S. Co.* v. *Wheeler* (1924) 68 Cal.App. 592, 597; *cf. Oakland* v. *California Construction Co.* (1940) 15 Cal.2d 573, 576.) Mindful of the ancient adage, that `no man can serve two masters' (Matthew 6:24; *cf. People* v. *Darby* (1952) 114 Cal.App.2d 412, 426), `a self-evident truth, as trite and impregnable as the law of gravity' (*Stockton P. & S. Co.* v. *Wheeler, supra*, at 601), the section was enacted to insure that public officials `making' official contracts not be distracted by personal financial gain from exercising absolute loyalty and undivided allegiance to the best interest of the entity which they serve, and at least with respect to those contracts, it does so by removing or limiting the *possibility* of their being able to bring any direct or indirect personal influence to bear on an official decision regarding them. (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569; *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 212; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 215.) The mechanism of the section is one of prohibiting public officials from being personally financially interested as private individuals in any such contract. . . ."

More recently in 76 Ops.Cal.Atty.Gen. 118, 119 (1993) we additionally stated:

". . . Section 1090 is concerned with financial interests, other than remote or minimal interests, which would prevent officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their public agencies. (See *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.) Moreover, when section 1090 is applicable to one member of the governing body of a public entity, the proscription cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 647-649; *Stigall* v. *City of Taft, supra*, 58 Cal.2d at p. 569; *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197; 70 Ops.Cal.Atty.Gen. 45, 48 (1987); 69 Ops.Cal.Atty.Gen. 102, 104 (1986).) A contract which violates section 1090 is void. (*Thomson* v. *Call, supra*, 38 Cal.3d at p. 646.)" (Fn. omitted.)

With these principles in mind, we turn to the terms of a development agreement executed by a city or county and a land developer. A development agreement contains the essential elements of a contract as defined by the Legislature. "A contract is an agreement to do or not to do a certain thing." (Civ. Code, § 1549.) "It is essential to a contract that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." (Civ. Code, § 1550.) A development agreement contemplates that both the city or county and the developer will agree to do or not to do certain things. Both parties will mutually consent to terms and conditions allowable under the law. Both will receive consideration. The developer will essentially receive the local agency's assurance that he can complete the project. The local agency in turn will reap the benefit of the development, with all the conditions it might legitimately require, such as streets, parks, and other public improvements or facilities. (See Civ. Code, §§ 1556, 1565, 1595, 1596, 1605.)

In *Thomson* v. *Call* (1985) 38 Cal.3d 633, a developer sought city approval for a 2500-unit development. The project required a rezoning of the land as well as the usual building permits. The city indicated that it would approve the development if the developer dedicated land for a park overlooking the project. One parcel of the land needed for the park was owned by a city council member. At subsequent council meetings and in anticipation of the possible sale of his property to the developer, the council member abstained from participation in council actions involving his property. He did, however, vote on other matters relating to the proposed development such as the rezoning application. The court concluded that the entire transaction, although accomplished in steps, was a single, multi-party "contract" for purposes of section 1090 and that it involved the city council member, at least indirectly. The court concluded:

> "As part of the transaction at issue, Call [the council member] sold property to the city, using IGC [the developer] as a conduit. Whether we regard his interest as direct or indirect, it is clearly a pecuniary interest forbidden by section 1090 and by the decisions applying conflict-of-interest rules generally. Neither the absence of actual fraud nor the possibility of a `good faith' mistake on Call's part can affect the conclusion that this contract violates section 1090 and is therefore void [citations]." (*Id.*, at p. 646; fns. omitted.)

If a formal development agreement had been executed in *Thomson* v. *Call*, could the council member have sold his property to the developer with impunity? We believe not. A council member may not "serve two masters" whether the development (1) proceeds in steps or (2) is the product of a single, formal development agreement.

### 2. Existence of a "Remote Interest"

Having determined that a development agreement constitutes a contract for purposes of section 1090, we next consider the type of interest that the council member would have in the proposed agreement. If the interest may be characterized as a "remote interest" (§ 1091), the council could execute the agreement with the developer if specified conditions were met.[3] We conclude that the council member's interest in the development agreement would be a remote interest.

Section 1091 states:

> "(a) An officer shall not be deemed to be interested in a contract entered into by a body or board of which the officer is a member within the meaning of this article if the officer has only a remote interest in the contract and if the fact of that interest is disclosed to the body of the board of which the officer is a member and noted in its official records, and thereafter the body or board authorizes, approves, or ratifies the

---

[3]The Legislature has also deemed certain interests in contracts to be "noninterests" (§ 1091.5, subd. (a) ["An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following . . . ."].) The prohibition of section 1090 is inapplicable in the circumstances described in section 1091.5, none of which are germane here.

contract in good faith by a vote of its membership sufficient for the purpose without counting the vote or votes of the officer or member with the remote interest.

"(b) As used in this article, `remote interest' means any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) That of an attorney of the contracting party or that of an owner, officer, employee, or agent of a firm which renders, or has rendered, service to the contracting party in the capacity of stockbroker, insurance agency, insurance broker, real estate agent, or real estate broker, if these individuals have not received and will not receive remuneration, consideration, or a commission as a result of the contract.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) This section is not applicable to any officer interested in a contract who influences or attempts to influence another member of the body or board of which he or she is a member to enter into the contract.

"(d) The willful failure of an officer to disclose the fact of his or her interest in a contract pursuant to this section is punishable as provided in Section 1097. That violation does not void the contract unless the contracting party had knowledge of the fact of the remote interest of the officer at the time the contract was executed."

Here the council member's spouse is a partner in a law firm which represents the developer in matters other than the proposed development. The spouse does not personally provide legal services to the developer, but as a partner, she owns a one percent interest in the firm.

Initially we note that even though the spouse does not provide legal services to the developer, such fact is immaterial. As a partner, she would be financially interested in any profits of the firm as well as its financial success, and hence would be interested in all matters handled by the firm. She must be considered an attorney of the developer for purposes of section 1090 under basic rules of agency and partnership law irrespective of which attorneys in the firm actually perform the legal services. (*Cf. Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 210-211, 214-215; 77 Ops.Cal.Atty.Gen. 112, 116 (1994). )

While the council member's spouse would have a financial interest in the development agreement, would the council member have one as well? Under settled case law and opinions of this office, a member of a board or commission *always* is financially interested in his or her spouse's source of income for purposes of section 1090. This is true even if the husband and wife have an agreement that their own earnings are to be treated as their separate property, since each spouse is liable for the necessities of life for the other. (See *Reece* v. *Alcoholic Bev. Etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 683; *Nielsen* v. *Richards* (1925) 75 Cal.App. 680, 685-687; 73 Ops.Cal.Atty. Gen. 191, 194-195 (1990); 69 Ops.Cal.Atty.Gen. 102, 106 (1986).)

Accordingly the council member here would be financially interested in the development agreement by virtue of his wife's status as a partner in a law firm handling matters for the developer, even though the firm does not represent the developer regarding the proposed development. However, since no fees will be generated for the firm with respect to the development, the spouse's (and thus council member's) financial interest would meet the statutory definition of being "remote."[4] The firm's attorneys "have not received and will not receive remuneration, consideration, or a commission as a result of the contract." (§ 1091, subd. (b)(6).)[5]

Finally we point out our observation made in 67 Ops.Cal.Atty.Gen. 369 (1984):

"It is to be noted that section 1091 of the Government Code speaks in terms of a board authorizing, approving or ratifying a contract `in good faith by a vote of its membership sufficient for the purpose without counting the vote or votes of the officer of member with the remote interest.'

"This office has characterized the requirements of section 1091 as meaning that the member must not only disclose his interest in the proposed contract and refrain from attempting to influence other members, but that the member should completely abstain from any participation in the matter. (See 65 Ops.Cal.Atty.Gen. 305, 307 (1982).)

"Such complete abstention would also appear to be required to insure compliance with the PRA if the remote interest also falls within the purview of the act as a financial interest. (See Gov. Code, § 87100; FPPC Reg. § 18702.)" (*Id.*, at p. 377, fn. 8.)[6]

We conclude that a city council may enter into a development agreement with a land developer if one of the council members is married to an attorney whose law firm represents the developer concerning matters unrelated to the proposed development, as long as the council member discloses the interest to the council, such interest is noted in the council's official records, and the council member abstains from voting.

---

[4]If the council member himself were the attorney and partner, the interest would clearly meet the statutory definition of being "remote." It is even more remote where the council member is not the attorney but rather the spouse of the attorney. Under these circumstances the remote interest exception must reasonably be extended to him in the same manner that the financial interest is extended to him through his spouse.

[5]It may be argued that the phrase "have not received and will not receive remuneration, consideration, or a commission as a result of the contract" does not constitute a limitation upon attorneys of contracting parties, but only upon the remaining individuals identified in subdivision (b)(6). (See Stats. 1984, ch. 113, § 1; Stats. 1982, ch. 451, § 1.) We need not decide this issue under the facts presented.

[6]The scope of this opinion is limited to an analysis of the requirements of sections 1090-1097. In particular, we do not address herein the requirements of the Political Reform Act of 1974 (§§ 81000-91015) administered by the Fair Political Practices Commission.

* * * * *