[S. F. No. 20906. In Bank. Oct. 23, 1962.]

OWEN STIGALL, JR., Plaintiff and Appellant, v. CITY OF TAFT et al., Defendants and Respondents.

Mack, Bianco, King & Eyherabide, Dominic Bianco and H. C. Mack, Jr., for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Dan Kaufmann, Assistant Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Henry G. Baron, Borton, Petrini, Conron, Brown & Condley, James Petrini and J. Richard Thomas for Defendants and Respondents.

Henry B. Ely as Amicus Curiae on behalf of Defendants and Respondents.

WHITE, J.—This is an appeal by plaintiff from a judgment of dismissal entered upon demurrers to the complaint which were sustained without leave to amend. Plaintiff seeks a declaration of the invalidity of a certain contract for plumbing work to be performed by the defendant Taft Plumbing Company, Inc., for the defendant City of Taft.

Plaintiff, a taxpayer of the City of Taft, alleges in his complaint that Glenn D. Black was a member of the city

council and was in charge of the council's building committee of the City of Taft for several years prior to June 8, 1961; that the committee supervised the drawing of plans and specifications and the call for bids for the construction of a civic center; that during a portion of the times involved Councilman Black was also the owner of a plumbing business known as the Taft Plumbing Company and later the owner of more than 3 per cent of the shares of stock of the Taft Plumbing Company, Inc., after its incorporation; that in January 1961 bids were received and opened at a regular meeting of the city council; that the Taft Plumbing Company, Inc., was the low bidder for plumbing work; that several persons objected to the bids by the plumbing company on the ground that Glenn D. Black was a member of the council and its building committee; that the council thereupon elected to reject all bids and to readvertise for bids at a later date; that on June 5, 1961, new bids were received and opened at a regular meeting of the city council; that the Taft Plumbing Company, Inc., was again the low bidder for plumbing work; that a special meeting was called for June 8, 1961, for the purpose of awarding the contract for the civic center building; that on June 8, 1961, at said meeting, the resignation of Glenn D. Black as a member of the council was received and accepted, and that thereafter at said meeting the council voted to award the contract for construction of the civic center to the defendant Bakersfield Construction Company, which said contract included the sub-bid by the Taft Plumbing Company, Inc., for plumbing work.

The prayer asks that ". . . the contract of Taft Plumbing Company, Inc. . . . be declared void," and that the city officials be restrained ". . . from disbursing or paying over to defendant, Taft Plumbing Company, any funds of the City of Taft on account of plumbing work performed on said Civic Center building."

Demurrers to the complaint alleging that it failed to state facts sufficient to constitute a cause of action were filed by the various city officials named as defendants and the Taft Plumbing Company, Inc. The trial court, in sustaining the demurrers, stated: "It appearing that the complaint cannot be amended to state a cause of action the demurrers are sustained without leave to amend and the action ordered dismissed."

For purposes of ruling on the demurrers, of course, the allegations of the complaint pleaded in proper form are

to be taken as true. (*Katenkamp* v. *Union Realty Co.*, 6 Cal.2d 765, 769 [59 P.2d 473]; *Terry* v. *Bender*, 143 Cal. App.2d 198, 201 [300 P.2d 119].) Plaintiff's sole contention for the invalidity of the contract, insofar as the subcontract for plumbing work is concerned, is that because Black was an official of the city a conflict of interest existed which, under statutory law, prohibited the making of a valid contract as between him or his plumbing company and the city. No claim is made that actual improprieties were practiced by Black, the city or the various city officials in the submission or acceptance of the plumbing company's bid during Black's actual tenure of office or thereafter. Nor is it claimed that the contract is unfair or unjust or not beneficial to the city.

The statutory provisions with which we are concerned are found in the Government Code, and it appears that there are two applications thereof either of which, it is urged, invalidates the instant contract. Section 1090 of article 4 (Prohibitions Applicable to Specified Officers) of chapter 1 of division 4 (Public Officers and Employees) in title 1 of the Government Code provides in part: "Members of the Legislature, state, county, special district, judicial district, and city officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ." Section 1092 provides that: "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member."

In section 36525 of chapter 1 (Officers in Sixth Class Cities) of division 3 of title 4 (Government of Cities) it is provided in part: "City officers shall not be interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ." Section 36527 then provides: "Any contract made in violation of Section 36525 may be avoided at the instance of any party except the officer interested in the contract. No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member."

The issue presented by the statutory provisions and the contentions of the parties all relate to the timing of Black's resignation with respect to the "making" of the contract. It

is contended by defendants, and amicus curiae in support thereof, that as Black's resignation was effective before an agreement was "made" in the strict contract sense Black was therefore no longer within the class of those who could not enter into a proper contract with the city at the time when the rights and duties of the parties came into being pursuant to the city's acceptance. We must agree with the contention that Black was no longer a city official at the time the city accepted the offer of Black's company for the performance of plumbing work. ▮ An agreement is made, in the contract sense, only upon the mutual assent of the parties thereto, and "an acceptance is as much a part of a contract as the proposal." (12 Cal.Jur.2d, Contracts, § 18, p. 208; see also Rest. Contracts, § 74.) Manifestly neither the city nor the plumbing company was bound to the conditions and covenants of the proposal submitted by the company until after Black's resignation. But if we were to hold that the purpose sought to be accomplished by the enactment of the statutory provisions could, by such strict construction, be so easily frustrated, we would necessarily close our eyes to the clear legislative intent.

In the first place we are not here concerned with the technical terms and rules applicable to the making of contracts. The Legislature instead seeks to establish rules governing the conduct of governmental officials. In this sense, is an act done or an agreement "made" only when the final, objective affirmation is communicated? It is true that no rights and duties accrue and no contract is technically made until such time, but the negotiations, discussions, reasoning, planning and give and take which goes beforehand in the making of the decision to commit oneself must all be deemed to be a part of the making of an agreement in the broad sense. ▮ The instant statutes are concerned with any interest, other than perhaps a remote or minimal interest, which would prevent the officials involved from exercising absolute loyalty and undivided allegiance to the best interests of the city. (See *People* v. *Darby*, 114 Cal.App.2d 412, 426 [250 P.2d 743] ; 15 Ops. Atty. Gen. 123, 128.) ▮ Conceding that no fraud or dishonesty is apparent in the instant case, the object of the enactments is to remove or limit the *possibility* of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. (*Terry* v. *Bender, supra,* 143 Cal.App.2d 198 [300 P.2d 119] ;

*Hobbs, Wall & Co.* v. *Moran,* 109 Cal.App. 316 [293 P. 145] ; *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal.App. 592 [229 P. 1020].)

In commenting on a federal penal statute under which a government contract was declared to be unenforceable by reason of a conflict of interest, the United States Supreme Court stated in *United States* v. *Mississippi Valley Generating Co.,* 364 U.S. 520 [81 S.Ct. 294, 5 L.Ed.2d 268], at pages 549-550 : ''The statute is thus directed not only at dishonor, but also at conduct that tempts dishonor. This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government. To this extent, therefore, *the statute is more concerned with what might have happened in a given situation than with what actually happened.* It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation.'' (Emphasis added.)

The circumstances in the instant case present a most pertinent illustration of what might transpire with impunity at other times and places, should the construction insisted upon by defendants prevail. A council member could participate in all negotiations giving a contract its substance and meaning, be instrumental in establishing specifications and schedules most advantageous to his or his firm's particular mode of operation, participate in the selection of his or his firm's offer, resign just prior to formal acceptance of that offer and execute the contract as the other party thereto. While on the one hand there is no allegation or claim of self-serving conduct in the instant case, on the other hand this is not a situation in which a councilman was only remotely connected with the making of the contract. On the contrary, Councilman Black was first forewarned, by the charges made at the time the original bids were submitted, that his continued presence on the council might invalidate a contract with his company. Nevertheless, he thereafter participated as a councilman, and the committee of which he had charge supervised the drawing of plans and specifications and the call for bids for the civic center. Manifestly the situation was one fraught with temptation and, as was said in the *Mississippi Valley Company* case (*United States* v. *Mississippi Valley Generating Co., supra,* 364 U.S. 520, 550), the legislation ''is

more concerned with what might have happened in a given situation than with what actually happened. It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation.'' As to whether the statute seeks to proscribe innocent, unknowing, insubstantial or remote conflicts of interests we offer no opinion, as the circumstances in the case now engaging our attention sufficiently isolate it from these considerations.

The legislation with which we are here concerned seeks to prohibit a situation wherein a man purports to deal at arm's length with himself and any construction which condones such activity is to be avoided. ██ ''Effect must be given to a legislative act if by a reasonable interpretation the legislative intent can be ascertained. [Citation.] ██ The statute must be construed with reference to the purpose intended by the law-making body. When the true intention of the legislature is ascertained it must be given effect. . . .'' (*Crawford* v. *Payne,* 12 Cal.App.2d 485, 488 [55 P.2d 1240].)

██ From the foregoing we are persuaded, if not compelled, to reject in the case at bar the narrow and technical interpretation of the word ''made'' and construe its statutory meaning to encompass the planning, preliminary discussions, compromises, drawing of plans and specifications and solicitation of bids, in all of which Councilman Black participated and which here were, in the broad sense, embodied in the making of the contract.

The judgment of dismissal is reversed with directions to the court below to overrule the demurrers and allow defendants a reasonable time within which to answer the complaint herein if they be so advised.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.