BOARD OF EDUCATION MEMBER — CONFLICT OF INTEREST A board of education may not purchase materials and supplies from a firm or company which employs one of the board members; nor may a board of education accept a bid on a contract solicited by the board from a company which employs one of the board members. The Attorney General has considered your request for opinion on the following questions: "1. May a board of education make occasional purchases of materials and supplies in the open market from the firm or company that employs one of the board members? The board member in question is a salaried employee and owns no stock in the company. Frequently, such a company is the only source of supply within the boundary of the school district. "2. Where the board of education of an independent school district asks for and receives bids on a contract and a company which employs one of the members of the board of education submits the lowest bid, may the board of education accept that bid?" Your first question has been presented to this office on a number of previous occasions, and has consistently been answered in the negative. See Opinions of the Attorney General dated April 19, 1939, July 30, 1949, and March 16, 1955. Two statutory provisions are applicable to your questions. 70 O.S. 5-124 [70-5-124] (1971), provides: "No board of education of any school district in the State shall make any contract with any of its members or with any company, individual or business concern in which any of its members shall be directly or indirectly interested. All contracts made in violation of this section shall be wholly void. A member of a board of education shall be considered to be interested in any contract made with any company, individual, or any business concern if such member of the board of education or any member of his immediate family owns any substantial interest in same. " 62 O.S. 371 [62-371] (1971), provides: "No board of county commissioners, nor city council, nor board of trustees of any town, nor any district board of any school district in this state shall make any contract with any of its members or in which any of its members shall be directly or indirectly interested; and all contracts made in violation of this section shall be wholly void. "For the purposes of this section the depositing of any funds in a bank or other depository shall not be considered the making of a contract." The July 30, 1949, Attorney General's Opinion concluded that both of the above statutes remain in effect notwithstanding an amendment which added the last sentence to Section 70 O.S. 5-124 [70-5-124]. The opinion viewed the amendment's reference to the board members "substantial interest" in the entity doing business with the school board as "explanatory of the intent of the Legislature with respect to an interest created by ownership (by the member or his immediate family), and does not alter the application of the statute to other forms of interest in such contracts." These views were re-examined and reaffirmed in the March 16 1955 Opinion. Both statutes were re-enacted in 1971 without any amendments which would alter the previous Attorney General's Opinions. A reading of the court decisions on this subject reveals the need for strict adherence to the statutory provisions. The Supreme Court of the United States in United States v. Mississippi Valley Generating Co., 364 U.S. 520,5 L.Ed. 268, 81 S.Ct. 294 (1961) discussed the purpose of a Federal conflict of interest statute: "The obvious purpose of the statute is to ensure honesty in the government's business dealings by preventing Federal agents who have interest adverse to those of the Government from advancing their own interest at the expense of the public welfare . . . The moral principle upon which the statute is based has its foundation in the Biblical admonition that no man may serve two masters . . . the statute establishes an objective standard of conduct, and that whenever a government agent fails to act in accordance with that standard, he is guilty of violating the statute, regardless of whether there is positive corruption. The -statute is directed not only at dishonor, but also at conduct that tempts dishonor." A similar holding is found in Stigall v. City of Taft, Cal., 375 P.2d 289 (1962) wherein the Supreme Court of California discussed the purpose of certain conflict of interest statutes: "Conceding that no fraud or dishonesty is apparent in the instant case, the object of the enactment is to remove or limit the possibility of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct." While a school board's contract with a company with which a school board member is employed may be less likely to impair the independence of judgment of the member than where the member has an ownership interest in the company, the possibility remains that the school board member may be influenced to show allegiance to his employer as well as to the patrons of the school district. It is this possible conflict at which the statutes aim. We, therefore, reaffirm the prior decisions of this office which have answered your first question in the negative. Moreover, the above authorities require that your second question be answered in the negative. It is, therefore, the opinion of the Attorney General that your questions be answered in the negative. A board of education may not purchase materials and supplies from a firm or company which employs one of the board members; nor may a board of education accept a bid on a contract solicited by the board from a company which employs one of the board members. (Joe C. Lockhart) ** SEE: OPINION NO. 74-159 (1975) ** ** SEE: OPINION NO. 91-651 (1991) ** ** SEE: OPINION NO. 87-518 (1987) ** ** SEE: OPINION NO. 87-530 (1987) ** ** SEE: OPINION NO. 77-167 (1977) ** ** SEE: OPINION NO. 78-206 (1978) ** ** SEE: OPINION NO. 79-183 (1979) ** ** SEE: OPINION NO. 80-134 (1980) **