[No. F004537. Fifth Dist. Sept. 17, 1985.]

CARL A. PESCOSOLIDO, JR., et al., Plaintiffs and Appellants, v. BEN MADDOCK, Defendant and Respondent.

COUNSEL

Littler, Mendelson, Fastiff & Tichy, Robert K. Carrol and Spencer H. Hipp for Plaintiffs and Appellants.

Diana Lyons, Ellen J. Eggers, Daniel A. Garcia, Ira L. Gottlieb and Wendy Sones for Defendant and Respondent.

OPINION

BEST, J.—Plaintiffs appeal a judgment of dismissal following the sustaining of defendant Ben Maddock's general demurrer to plaintiffs' complaint. The demurrer was on the ground: "The complaint fails to state a cause of action for which relief can be granted, since defendant Maddock cannot be sued in his individual capacity as an agent of the UNITED FARM WORKERS OF AMERICA, AFL-CIO."

In sustaining the demurrer without leave to amend, the trial court relied on subdivision (b) of Labor Code section 1165, which is included in the Agricultural Labor Relations Act of 1975 (ALRA).

Plaintiffs are the owners of Sequoia Orange Company, Exeter Orange Company and Sequoia Enterprises. Defendants below are the Agricultural Labor Relations Board (ALRB), officers and agents of the ALRB, the United Farm Workers of America, AFL-CIO (UFW), and Ben Maddock, an agent of the UFW.

This suit arises out of the UFW's attempts to organize the agricultural employees of plaintiffs' companies. The facts, which are deemed to be true for purposes of this appeal, are taken from plaintiffs' complaint. (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 567-568 [25 Cal.Rptr. 441, 375 P.2d 289]; *Seidner* v. *1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 902 [166 Cal.Rptr. 803].)

On March 14, 1983, defendant Maddock, on behalf of the UFW, filed a representation petition for certification with the ALRB's Delano office. The following day, plaintiff Carl Pescosolido requested assistance from the ALRB in completing an employer response form to the petition. Luis Lopez, an officer of the ALRB, and Manuel Melgoza, an ALRB attorney, went to Pescosolido's office ostensibly to help him fill out the form. Lopez and Melgoza intentionally failed to tell Pescosolido that Melgoza was an attorney for the ALRB. At the office, Melgoza and Lopez gained confidential and personal financial information regarding plaintiffs from Pescosolido by threatening Pescosolido with ALRB statutory and regulatory presumptions. On March 16, 1983, defendant Maddock, agent of the UFW, filed an amended petition for certification with the ALRB. This petition contained some of the confidential and personal information that was obtained from Pescosolido the day before by the ALRB representatives.

Plaintiffs' complaint contains four causes of action. Defendant Maddock's alleged wrongdoing is set forth in the second and third causes of action. In the second cause of action, Maddock is charged with intentionally participating in the disclosure of plaintiffs' information from the ALRB to the UFW, thereby conspiring to violate the California Information Practices Act. (Civ. Code, §§ 1798-1798.76.) In the third cause of action, defendants Maddock and the UFW are charged with conspiring with defendants ALRB, Melgoza and Lopez to violate plaintiffs' right to privacy under article I, section 1 of the California Constitution.

## DISCUSSION

"A demurrer is a pleading . . . with the primary function of testing the legal sufficiency of the pleading to which it is addressed, and only raises questions of law [citations]." (*Seidner* v. *1551 Greenfield Owners Assn.*, *supra,* 108 Cal.App.3d at p. 902, fn. omitted.) The question of law raised

by Maddock's demurrer is whether Labor Code section 1165, subdivision (b), shields him from personal liability for the acts complained of in the complaint.

Plaintiffs allege that defendant is personally liable for his actions under Civil Code section 1798.53. This section provides: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal or confidential information maintained by a state agency or from 'records' within a 'system of records' (as such terms are defined in the Federal Privacy Act of 1974 (P.L. 93-579; 5 U.S.C. 552a)) maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains."

It is, of course, the general rule that an agent is personally liable for his own tortious acts committed in the course and scope of his agency or even at the direction of his principal. (Civ. Code, § 2343, subd. 3.) Plaintiffs allege in their complaint that at all times Maddock was acting in his capacity as an agent of UFW. Maddock, therefore, could be held personally liable for disclosure of personal or confidential information encompassed within Civil Code section 1798.53, unless, as contended by him, Labor Code section 1165 bars the action against him.

Labor Code section 1165 provides: "(a) Suits for violation of contracts between an agricultural employer and an agricultural labor organization representing agricultural employees, as defined in this part, or between any such labor organizations, may be brought in any superior court having jurisdiction of the parties, without respect to the amount in controversy.

"(b) Any agricultural labor organization which represents agricultural employees and any agricultural employer shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of this state. Any money judgment against a labor organization in a superior court shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

■ Plaintiffs contend that the provisions of Labor Code section 1165 are inapplicable to this case because the acts complained of do not involve the breach of a labor contract nor arise out of a labor contract dispute. We agree for the reasons discussed below.

The question of whether subdivision (b) of Labor Code section 1165 applies only to suits involving or arising out of labor contracts has not been

addressed previously by the California courts. It is well established, however, that the ALRA is patterned after the National Labor Relations Act (NLRA) and that federal decisions interpreting the federal statutes may be relied upon in interpreting provisions of the ALRA. (Lab. Code, § 1148; *Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 855 [176 Cal.Rptr. 753, 633 P.2d 949]; *Vista Verde Farms* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 307, 318 [172 Cal.Rptr. 720, 625 P.2d 263].)

Title 29 United States Code Annotated section 185, which codified section 301 of the Taft-Hartley Act, is virtually identical to Labor Code section 1165 and provides in relevant part: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." (29 U.S.C.A. § 185(a), (b).)

The legislative history of the entire section 301 of the Taft-Hartley Act, as discussed in *Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S.Ct. 912], indicates that section 301 was contemplated and created to apply only in the context of labor contracts. Congress sought to stabilize labor relations between employers and labor organizations by developing a procedure for the enforceability of collective bargaining agreements. Section 301(a), then, was developed by Congress to allow employers and labor organizations to maintain suits in federal court for the violation of a labor contract. (*Textile Workers, supra,* at pp. 452-454 [1 L.Ed.2d at pp. 978-979]; see also 1 Morris, The Developing Labor Law, Board Action and Contract Agreements (2d ed. 1983) p. 877.) Furthermore, the court in *Textile Workers* noted that section 301(b) was to be read as merely complementing section 301(a). "From the face of the Act it is apparent that § 301(a) and § 301(b) supplement one another. Section 301(b) makes it possible for a labor organization, representing employees in an industry affecting commerce, to sue and be sued as an entity in the federal courts.

Section 301(b) in other words provides the procedural remedy lacking at common law." (*Textile Workers, supra,* at p. 451 [1 L.Ed.2d at p. 978].)

The cases since *Textile Workers* applying section 301(b) support the conclusion that it only shields liability of union agents in actions arising out of a labor contract dispute. The overwhelming majority of cases discussing the applicability of section 301(b) involve suits brought under section 301(a). *Atkinson* v. *Sinclair Refining Co.* (1962) 370 U.S. 238 [8 L.Ed.2d 462, 82 S.Ct. 1318] is one example. In that case, plaintiff sued a union and individual union members for the breach of a collective bargaining agreement and for tortious interference with contractual relations. After the court held that the complaint alleged conduct falling within the scope of a violation of a collective bargaining agreement, it held that the individual defendants were shielded from liability under section 301(b). (*Atkinson, supra,* at pp. 246-249 [8 L.Ed.2d at pp. 468-471].)

While section 301(b) has been applied to suits that do not directly allege a breach of a labor contract, if the cause of action arises out of a breach of a collective bargaining agreement or a dispute involving a labor contract, no matter what the action is entitled, the suit may be deemed a section 301 suit and personal liability of agents or employees of the union will be precluded. (*Salinas Cooling Co.* v. *Fresh Fruit & Veg. Workers* (9th Cir. 1984) 743 F.2d 705; *Suwanchai* v. *International Broth. of Elec. Workers* (D.N.H. 1981) 528 F.Supp. 851.) In the *Salinas Cooling Co.* case, the court noted, "The Supreme Court has made clear that the policy that the union should be the sole source of recovery 'cannot be evaded or truncated by the simple device of suing union agents or members, *whether in contract or tort . . .* in a separate count . . . for damages for violation of a collective bargaining contract. . . .'" (*Salinas Cooling Co., supra,* 743 F.2d at p. 708, italics in original.)

When Labor Code section 1165 is construed in the light of the above federal precedents, it becomes clear that the Legislature must have intended subdivision (b) to supplement subdivision (a), which clearly applies only to suits for violation of labor contracts. It follows that when the suit does not arise out of a breach of a labor contract or a dispute involving a labor contract, section 1165, subdivision (b), does not insulate union agents or members from personal liability for their own tortious acts.

Even without the guidance of federal precedents, our conclusion would be the same. Labor Code section 1165, subdivision (b), by its plain terms, simply provides: (1) Any agricultural labor organization and any agricultural employer shall be bound by the acts of their agents; (2) any labor organization may sue or be sued as an entity in the California courts; and

(3) any money judgment against a labor organization is to be satisfied only from the assets of the labor organization as an entity and not by recourse to the assets of any agent or member of the labor organization.

The statute does not purport to provide blanket immunity to agents of a labor union for civil wrongs committed by them while acting in their capacity as agents of the union. Had the Legislature intended to provide such a blanket immunity it could easily have done so.

The complaint in the case at bench does not allege causes of action for breach of a labor contract or that arise out of a labor contract dispute. On the contrary, plaintiffs allege that the disclosures complained of occurred in connection with the filing of a petition for certification by the UFW with the ALRB. Defendant Maddock is sued on the theory that he knowingly and intentionally participated in the disclosure of plaintiffs' personal and confidential financial information and conspired with the other defendants to violate the California Information Practices Act, Civil Code section 1798 et seq. and article I, section 1 of the California Constitution.

We hold that subdivision (b) of Labor Code section 1165 is not a bar to this action against defendant Ben Maddock, and the trial court improperly sustained Maddock's demurrer to the complaint.

The judgment of dismissal is reversed, plaintiffs to have their costs on appeal.

Woolpert, Acting P. J., and Ritchey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.