TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| | :     No. 97-1011 |
| of | : |
| | :     March 4, 1998 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney | : |
| General | |
| | : |

_____

THE HONORABLE LOUISE H. RENNE, CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO, has requested an opinion on the following question:

May a city, with the approval of its airport commission and advice of its airport director, enter into a contract with a for-profit corporation formed by the city and in which the city is the sole shareholder, where a city airport commissioner and the airport director serve on the board of directors of the corporation?

CONCLUSION

A city, with the approval of its airport commission and advice of its airport director, may enter into a contract with a for-profit corporation formed by the city and in which the city is the sole shareholder, even though a city airport commissioner and the airport director serve on the board of directors of the corporation.

ANALYSIS

In July of 1997 the San Francisco Board of Supervisors approved the formation of a private, for-profit corporation to offer consulting services to airports throughout the world that are engaged in developing new or expanded airport facilities. The city is the sole shareholder of the corporation.

The board of directors of the corporation consists of five members. Three members are from the private sector, while the other two members are a city airport commissioner and the airport

director, both of whom serve on the corporation's board without compensation. The San Francisco International Airport is wholly owned and operated by the city.

The question to be resolved is whether section 1090 of the Government Code Footnote No. 1 prevents the city from entering into contracts, such as lease agreements for office space and equipment, with the corporation, where the contracts are subject to approval by the city airport commission and the advice and recommendation of the airport director. We conclude that section 1090 does not prohibit the execution of contracts between these two entities.

Section 1090 provides in relevant part:

"Members of the Legislature, state, county, district and city officers shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

For purposes of section 1090, board members are conclusively presumed to be involved in the making of contracts under their jurisdiction. (*Thompson* v. *Call* (1985) 38 Cal.3d 633, 649; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211-212.) Here, the San Francisco Board of Supervisors would clearly be subject to section 1090's prohibition.

Additionally, however, all persons who participate in preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and solicitations for bids, as well as persons who advise in the making of contracts, are deemed to have "made" the contracts within the meaning of section 1090. (See *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 570-571; *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 212-213; *People* v. *Sobel* (1974) 40 Cal.App.3d 1046, 1052; *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 237; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 291.) Accordingly, here, the city airport commissioner and airport director would be deemed to be "making" the contracts in their official capacities, not only for the corporation but also for the city. Under these circumstances, does section 1090 preclude the city from making any contracts with the corporation?

Section 1090 prohibits public officers from being "financially interested" in contracts made by them in their official capacity. In 65 Ops.Cal.Atty.Gen. 41 (1982), we concluded that a local agency could not contract with a for-profit corporation because one of its public officers was a member of the board of directors of the corporation. We found that the officer would have a financial interest in any contract even though he received no compensation for being a director. We stated:

". . . [A] corporate director is a member of the corporation's ultimate governing body (Corp. Code § 300) and has a fiduciary relationship to the corporation and its shareholders involving 'a duty of the highest good faith to the corporation and its stockholders.' [Citations.] There is thus an obvious tension of conflicting allegiances and loyalties when a public officer is involved in a transaction with a corporation of which he is a director, whether or not he is compensated as a director. Construing the term 'financially interested' so as to place such transactions beyond the restrictions of section 1090 would be inimical to the statute's purpose of ensuring that public

officers are insulated from conflicting loyalties in the discharge of their official duties. '[A] restricted meaning should not be given to a word which would circumvent the evident purpose of the act when a permissibly broader meaning would carry out that purpose.' [Citations.]

"Accordingly, it is our opinion that one's service as a director of a [for-] profit corporation renders one 'financially interested' within the meaning of section 1090 even in the situation where such service is not compensated. . . ." (*Id* ., at pp. 57-58.)

The rationale of our conclusion, therefore, was that the director had a fiduciary obligation to maximize the corporation's for-profit interests at the expense of the public agency. Any contract between the two would result in "an obvious tension of conflicting allegiances and loyalties."

Here, on the other hand, any allegiance and loyalty to the corporation *is* an allegiance and loyalty to the city. We do not believe that section 1090 has any application where the contract is between a public agency and its wholly owned corporation, regardless of whether the corporation is nonprofit or for-profit. In the leading case of *Thomson* v. *Call*, *supra*, 38 Cal.3d 633, the court explained the purposes of section 1090 as follows:

"However, examination of the goals and policy concerns underlying section 1090 convinces us of the logic and reasonableness of the trial court's solution. *In San Diego* v. *S.D. & L.A.R.R. Co.*, *supra*, 44 Cal. 106, we recognized the conflict-of-interest statutes' origins in the general principle that 'no man can faithfully serve two masters whose interests are or may be in conflict': 'The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. . . . For even if the honesty of the agency is unquestioned. . . yet the principal has in fact bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exertion of all this in his own favor.' (44 Cal. at p. 113.) We reiterated this rationale more recently in *Stigall* v. *City of Taft*, *supra*, 58 Cal.2d 565: 'The instant statutes [§ 1090 et seq.] are concerned with *any* interest, other than perhaps a remote or minimal interest, which would prevent the officials from exercising absolute loyalty and undivided allegiance to the best interests of the city.' [Citation.] . . ." (*Id*., at pp. 647-648.)

In all the situations where a proscribed financial interest has been found, the possibility of serving two competing "masters" has been present. (See *Thomson* v. *Call, supra*, 38 Cal.3d 633; *Frazer-Yamor Agency, Inc.* v. *County of Del Norte, supra*, 68 Cal.App.3d 201; *People* v. *Valerga* (1977) 67 Cal. App.3d 847; *People* v. *Sobel, supra,* 40 Cal.App.3d 1046; *People* v. *Watson* (1971) 15 Cal.App.3d 28; 69 Ops.Cal.Atty.Gen. 255 (1986); 65 Ops.Cal.Atty.Gen. 305 (1982); 58 Ops.Cal.Atty.Gen. 670 (1975).)

In the circumstances contemplated here, the city owns the for-profit corporation in its entirety. Hence, the city is the beneficiary of all of the corporation's profits. The rationale that underlies the section 1090 proscription, as well as our 1982 opinion, is absent. In "making" the contracts, the city airport commissioner and airport director are not serving two masters and will not be receiving any personal gain. Ultimately, these two public officers must exercise "absolute loyalty and undivided allegiance to the best interests of the city" (*Stigall* v. *City of Taft*, *supra*, 58 Cal.2d at 569) when considering the terms of any contract between the city and the corporation. We reject the suggestion that our 1982 opinion should be extended here to find proscribed

financial interests, where such findings would not serve the purposes of the Legislature in enacting section 1090.

We conclude that a city, with the approval of its airport commission and advice of its airport director, may enter into a contract with a for-profit corporation formed by the city and in which the city is the sole shareholder, even though a city airport commissioner and the airport director serve on the board of directors of the corporation.

\* \* \* \* \*

**Footnote No. 1**
All section references hereafter are to the Government Code.