TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-405 |
| of | : | |
| | : | November 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE HELEN MACLEOD THOMSON, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Is a former member of a city council who participated in the planning, discussions, and approval necessary to implement a city loan program for developing businesses within the city thereafter precluded from acquiring a loan under the program?

CONCLUSION

A former member of a city council who participated in the planning, discussions, and city approval necessary to implement a city loan program for developing businesses within the city is thereafter precluded from acquiring a loan under the program.

ANALYSIS

A city councilman, while a member of both the council and the city's redevelopment agency, participated in the planning, discussions, and approval necessary to implement a loan program for developing businesses within the city. The revolving loan program is currently funded by a federal community development block grant.

After leaving office, the councilman decided to establish an equipment rental business in the city. May he now obtain a loan under the city's program he helped create? We conclude that such a loan would be prohibited by the terms of Government Code section 1090. **Footnote No. 1**

Section 1090 provides:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official

capacity, or by any body or board of which they are members. . . ."

Both the courts and this office have concluded that a contract may be "made" by a public officer or employee within the meaning of section 1090 even though the actual execution of the contract occurs after he or she leaves such public office or employment. In the leading case of *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, the court concluded that a contract was "made" by a former city councilman after leaving office:

> ". . . [We] are persuaded, if not compelled, to reject in the case at bar the narrow and technical interpretation of the word 'made' and construe its statutory meaning to encompass the planning, preliminary discussions, compromises, drawing of plans and specifications and solicitations of bids, in all of which Councilman Black participated and which there were, in the broad sense, embodied in the making of the contract." (*Id.,* at p. 571.)

Accordingly, the court ruled that the councilman could not contract with the city after leaving office where he had participated in the planning and preliminary discussions in setting up the contract. (*Ibid*.)

In 66 Ops.Cal.Atty.Gen. 156 (1983), we were asked whether county employees could propose to the county that it contract out the administration of its federal community development block grant program and thereafter leave county service and become the private administrators of the program. The county employees had "initially discussed the matter with, and made comments and suggestions to appropriate county persons charged with investigating its feasibility and desirability. . . ." (*Id.*, at p.157.) We stated:

> "Since the word 'made' as it is used in section 1090 . . . has been more broadly interpreted than its technical sense in contract law, to encompass such embodiments in the making of a contract as preliminary discussions, negotiations, compromises, *reasoning, planning, drawing of plans and specifications* and solicitation for bids [citations], the final execution of a contract, which is the time when it is technically made, 'is not the only time when a conflict of interest [under § 1090] may be presented.' [Citation.] Rather the section is violated whenever it can be established that a public employee *had the opportunity to and did influence* its execution or participated in its making, either directly or indirectly to promote his personal interests. [Citations.] Have the county employees in the situation presented come within its prescriptive ambit? We believe they have." (*Id.*, at pp. 159-160.)

In a letter opinion issued in 1993 (Cal.Atty.Gen., Indexed Letter, No. IL 92-1212 (Jan. 26, 1993)), we considered whether a former city planning commissioner could be hired as a city consultant after leaving office. We concluded:

> "There is no question here that the former planning commissioner, in his role as chair of the organization subcommittee of the planning commission, was significantly involved in the policy determination to have much of the city's general plan revision project done through consultants. In our view, it is not controlling that this recommendation came during a prior fiscal year and with respect to a prior fiscal year budget. Both the case law and 'prudent conservatism,' (which we have always advocated with respect to section 1090), would dictate that all matters concerning the general plan revision be considered a 'single transaction' despite the overlap between budgets and fiscal years. [Citation.]

> "Likewise, we believe that an attempt here to segment the question of hiring consultants as between different fiscal years and particular budgets would be rejected by a court and a violation of section 1090 found if the proposed consultant contract were to be awarded. In short, the former commissioner was an active participant in the overall city policy decision to 'contract-out' much of the general plan revision. Accordingly, he cannot now benefit from such

participation. [Citation.]

"Our conclusion does not mean that members of advisory boards and commissions of local agencies may never be hired as consultants upon leaving public service. It means only that if the officials were instrumental in proposing 'contracting-out' services, they may not later be the beneficiaries of their proposals."

Recently, in *People* v. *Honig* (1996) 48 Cal.App.4th 289, the court rejected the contention that section 1090 contained a foreseeability requirement, stating:

". . . In defendant's view, to be financially interested in a contract within the meaning of section 1090 it must be reasonably foreseeable that the contract will have a financial effect on a source of income of the official and the effect must be material, meaning 'a financial effect of real importance or great consequence,' or 'a significant effect on a source of income.'

"We reject defendant's suggested interpretation of section 1090. This section has long been interpreted as prohibiting an official from having any financial interest in a contract, whether direct or indirect. [Citation.] Although the Legislature amended the statute in 1963 to clarify that it was concerned with financial interests, the Legislature has never seen fit to qualify the proscribed financial interests with modifiers such as 'material,' 'substantial,' 'significant,' or 'direct,' 'certain,' 'probable,' and the like. [Citation.]" (*Id*., at pp. 323-324, fn. omitted.)

We similarly reject here the suggestion that section 1090 may only be violated when at the time the official was instrumental in setting up a government program, he subjectively intended to contract with the agency after leaving office. The statute has never been so rigidly construed. (See 66 Ops.Cal.Atty.Gen., *supra*, at 159-160; Cal.Atty.Gen., Indexed Letter, No. IL 92-1212, *supra*.) Instead, we have looked to whether the official had the opportunity and did participate in the policy decision to create the government program under which the contract would later be executed.

We note that the harsh consequences of section 1090's prohibition have been ameliorated by the Legislature in specified circumstances involving what are termed "remote interests" (§ 1091) and "noninterests" (§ 1091.5). (See 81 Ops.Cal.Atty.Gen. 169, 172 (1998).) The only exemption from the prohibition that merits our analysis here is section 1091.5's classification as a "noninterest" of certain "public services" received under contract:

"(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) That of a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the board.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

We have examined the legislative history of the 1961 amendment that added the "public services" exemption to section 1091.5. (Stats. 1961, ch. 381, § 2.) The scope of this exemption is not identified therein. We have previously determined informally, however, that "public services" would include public utilities such as water, gas, and electricity, and the renting of hangar space in a municipal airport on a first come, first served basis. The furnishing of such public services would not involve the exercise of judgment or discretion by public agency officials. Rather, the rates and charges for the services would be previously established and administered uniformly to all members of the public. (See 80 Ops.Cal.Atty.Gen. 335, 338 (1997).)

Obtaining a government loan involves more complex considerations. The loan applicant must qualify, and the public official approving the loan must exercise some degree of discretion and judgment. Whatever may be the scope of the "public services" exemption of section 1091.5, subdivision (a)(3), it does not include the extension of a business development loan, where the conditions of the loan would be specific to the particular proposal in question. In *People* v. *Watson* (1971) 15 Cal.App.3d 28, 37, the court held that a debtor-creditor relationship is covered by section 1090 as a contract and financial interest.

Finally, we note the proscription contained in Public Contract Code section 10411, subdivision (a), applicable to former state officers and employees:

"No retired, dismissed, separated, or formerly employed person of any state agency or department employed under the state civil service or otherwise appointed to serve in state government may enter into a contract in which he or she engaged in any of the negotiations, transactions, planning, arrangements, or any part of the decision-making process relevant to the contract while employed in any capacity by any state agency or department. The prohibition of this subdivision shall apply to a person only during the two-year period beginning on the date the person left state employment."

A similar one-year proscription is contained in the federal law governing local public activities financed by community development block grants. (24 C.F.R. § 570.611 (1997).) The Legislature could easily provide a like limitation period regarding the execution of contracts for purposes of section 1090, if it so chooses.

We conclude that a former member of a city council who participated in the planning, discussions, and approval necessary to implement a city loan program for developing businesses within the city is thereafter precluded from acquiring a loan under the program.

\* \* \* \* \*

**Footnote No. 1**
Section references are to the Government Code.