TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>OPINION</td><td>:</td><td>No. 99-304</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>of</td><td>:</td><td>July 15, 1999</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>BILL LOCKYER</td><td>:</td><td></td></tr>
<tr><td>Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>CLAYTON P. ROCHE</td><td>:</td><td></td></tr>
<tr><td>Deputy Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
</table>

THE HONORABLE JAMES K. HAHN, CITY PROSECUTOR, CITY OF LOS ANGELES, has requested an opinion on the following question:

May a project area committee provide advice to a redevelopment agency if several committee members own property within the project area?

CONCLUSION

A project area committee may provide advice to a redevelopment agency even though several committee members own property within the project area.

ANALYSIS

In 1997, a city's community redevelopment agency amended its redevelopment plan for a part of the city. The agency is considering a proposal to develop a 42-acre site within the project area. A 25-member project area committee ("PAC") has been formed to provide advice on policy matters relating to the proposed development. The question presented for resolution is whether the PAC may give its advice to the agency if several of the PAC members own property within the project area. We conclude that the potential conflicts of interest do not preclude the PAC from advising the agency.

The Legislature has adopted a comprehensive statutory scheme, the Community Redevelopment Law (Health & Saf. Code, §§ 33000-33855; "Law"),[1] "[t]o protect and promote the sound development and redevelopment of blighted areas and the general welfare of the inhabitants of communities in which they exist . . ." (§ 33037, subd. (a)). Under provisions of the Law, there is "in each community a public body, corporate and politic, known as the redevelopment agency of the community." (§ 33100.)

A PAC is formed under the terms of section 33385:

"(a) The legislative body of a city or county shall call upon the residents and existing community organizations in a redevelopment project area to form a project area committee . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The legislative body shall, by resolution, adopt a procedure pursuant to this section for the formation of the project area committee. The procedure shall include, but not be limited to, all of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The project area committee shall only include, when applicable, elected representatives of residential owner occupants, residential tenants, business owners, and existing organizations within the project area. Each group shall be adequately represented. Each organization represented pursuant to this subdivision shall appoint one of its members to the project

---

[1] All references to the Health and Safety Code prior to footnote 2 are by section number only.

area committee. No project area committee member may be appointed by the legislative body or the redevelopment agency or any member of either body. The members of the committee shall serve without compensation.

"(d)(1) The election of a representative project area committee shall be held in each project area within 100 days after the project area is selected. The legislative body shall adopt, after a duly noticed public hearing, communitywide procedures for filing for election, publicizing an election, holding an election, and for reviewing disputed elections, filling vacated seats, and other matters related to the electoral process. These procedures shall prohibit crossover voting between categories of residential owner occupants, residential tenants, and business owners to ensure, for example, that a business cannot vote for a tenant representative. However, if the legislative body determines that the method of selection of community organizations shall include election pursuant to subdivision (b), the legislative body shall determine the appropriate electorate and may authorize crossover voting in the election of community organizations.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The duties of a PAC are set forth in section 33386:

"The redevelopment agency through its staff, consultants, and agency members shall, upon the direction of and approval of the legislative body consult with, and obtain the advice of, the project area committee concerning those policy matters which deal with the planning and provision of residential facilities or replacement housing for those to be displaced by project activities. The agency shall also consult with the committee on other policy matters which affect the residents of the project area. . . ."

In addition, the Law provides that all redevelopment plans and amendments to such plans must be submitted to a PAC, if one exists within the project area, and the PAC "may, if it chooses, prepare a report and recommendation for submission to the legislative body." (§§ 33347.5, 33385.5; *North Hollywood Project Area Com.* v. *City of Los Angeles* (1998) 61 Cal.App.4th 719, 724, fn. 4.) If the PAC opposes adoption of a plan or proposed amendment, the legislative body may adopt the plan or amendment only by a two-thirds vote of its entire membership. (§§ 33366, 33385.5.)

Accordingly, a PAC advises a redevelopment agency in the preparation of a redevelopment plan or amendment (*Lippman* v. *City of Los Angeles* (1991) 234 Cal.App.3d

1630, 1632-1633, 1635-1636) and "concerning those policy matters which deal with the planning and provision of residential facilities or replacement housing" and "other policy matters which affect the residents of the project area . . ." (§ 33386). To perform its duties, a PAC is allocated "funds or equivalent resources for a committee office, equipment and supplies, legal counsel, and adequate staff . . . ." (§ 33388, subd. (a).) In *North Hollywood Project Area Com.* v. *City of Los Angeles*, *supra*, 61 Cal.App.4th at 724, the court concluded that a PAC "operates in an advisory capacity and lacks independent decisionmaking authority in the redevelopment process." (Fn. omitted.)

In the circumstances presented, several PAC members own property in the project area, as required to meet the statutory qualifications for them to be PAC members. (§ 33385, subd. (c).) Some of these owners may eventually sell their properties to the agency or developer or enter into their own development agreements with the agency. Undeniably, they have their own personal, financial interests to protect and enhance when the PAC advises the agency concerning "policy matters which deal with the planning and provision of residential facilities or replacement housing" and "other policy matters which affect the residents of the project area . . . ." (§ 33386.) Other PAC members will, of course, have a different perspective to balance the views of the PAC members who are property owners.

The statutory prohibition we must consider here is Government Code section 1090,[2] which provides in part:

> "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

Section 1090 is concerned with financial interests, other than remote or minimal interests,[3] that would prevent officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their public agencies. (See *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.) When a contract is to be executed by the governing body of a public entity and a member of the body has a proscribed interest, the prohibition cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 649-650; *Stigall* v. *City*

---

[2] All references to the Government Code hereafter are by section number only.

[3] Provisions relating to "remote interests" (§ 1091) and "non-interests" (§ 1091.5) are not germane to the contractual matters we deal with here.

*of Taft*, *supra*, 58 Cal.2d at 569; *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 195; 70 Ops.Cal.Atty.Gen. 45, 48 (1987); 69 Ops.Cal.Atty.Gen. 102, 104 (1986).) A contract which violates section 1090 is void. (*Thomson* v. *Call*, *supra*, 38 Cal.3d at 646.)

Significantly, the prohibition of section 1090 is not restricted to the specific officer or board that "makes" the contract. The prohibition covers consultants and advisers who are involved in the preliminary planning for the contract, including discussions, negotiations, reasoning, or the drawing of plans and specifications for the contract. (See *Stigall* v. *City of Taft*, *supra*, 58 Cal.2d at 569-571; *People* v. *Sobel* (1974) 40 Cal.App.3d 1046, 1052; *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 236-237; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 291- 292.)

Hence, the issue to be resolved here is whether a redevelopment agency may enter into a development agreement[4] with a developer after it has received advice from a PAC, some of whose members own property in the project area. One alternative would be to preclude the PAC from performing its statutory duties so that the agency may execute the development agreement. Another alternative would have the interested members of the PAC not participate in the preparation or presentation of the advice. We believe that neither alternative is necessary and that both the redevelopment agency and the PAC may perform their statutory duties without violating the prohibition of section 1090.

First, we have never extended the proscription against making a contract by a board with a financially interested member to the situation of an advisory committee with a financially interested member. No case has so extended the prohibition of section 1090. Rather, an advisory committee may perform its responsibilities as long as the interested member abstains and does not participate in the giving of advice. (Cal. Atty. Gen., Indexed Letter No. IL 72-143 (Aug. 16, 1992); see Conflicts of Interest (Cal. Dept. of Justice, pamp. 1998), p. 48.) We reaffirm our prior determination concerning advisory committees in general. They are treated differently from boards responsible for executing the actual contracts under the governing statutes and policy reasons for the prohibition. Abstention by the interested member is allowed for the one, but not for the other.

However, here, we have a different set of circumstances with respect to a PAC. In effect, the Legislature has designated persons who have financial interests in a redevelopment project area to be advisers to the redevelopment agency concerning policy matters that would affect the advisers as property owners. However, the PAC's advice is limited to (1) adoption of a redevelopment plan, (2) amendment of a redevelopment plan,

---

[4] A development agreement is the type of contract that would ordinarily come under the terms of section 1090. (See *Thomson* v. *Call*, *supra*, 38 Cal.3d 633.)

(3) policy matters that deal with the planning and provision of residential facilities or replacement housing, and (4) other policy matters that affect the residents of the project area. To apply the general prohibition of section 1090 in such circumstances or to require the financially interested PAC members to abstain would undermine the Legislature's express determination that property owners in the project area are to render advice as members of the PAC. The redevelopment agency and legislative body will receive the PAC's advice, knowing that some PAC members will have personal, financial interests to protect and promote. That is the process envisioned and sanctioned by the Legislature.

Somewhat analogous to the present situation are statutes in which the Legislature has allowed public officials to act in spite of particular conflicts of interest that might arise. (See, e.g., Ed. Code, § 35239; Health & Saf. Code, §§ 1441.5, 32111, 33130.) These special statutes control the more general prohibition of section 1090. (51 Ops.Cal.Atty.Gen. 30, 30-31 (1968).)

Also somewhat analogous would be situations in which a conflict of loyalties would normally preclude a person from serving as an officer of two different public agencies under the incompatible offices doctrine, but the Legislature has determined that such specific conflicts are acceptable. (See *American Canyon Fire Protection Dist.* v. *County of Napa* (1983) 141 Cal.App.3d 100; *McLain* v. *County of Alameda* (1962) 209 Cal.App.2d 73; 81 Ops.Cal.Atty.Gen. 51, 53 (1998); 78 Ops.Cal.Atty.Gen. 352, 353 (1995); 66 Ops.Cal.Atty.Gen. 293, 301 (1983); 63 Ops.Cal.Atty.Gen. 748, 750 (1980).)

Here, the potential "conflict" is not only considered allowable by the Legislature, it is required by the Legislature to give the PAC's advice a broad perspective. Without one or more interest groups involved in the policy determinations, the comprehensive balance of the PAC's advice would be reduced thereby. To conclude that a PAC could not give advice because some of its members must own property in the project area would render meaningless the statutory scheme under which PACs are formed; we cannot presume the Legislature engaged in an idle act when it enacted Health and Safety Code section 33385. (See *California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633-634.) The specific provisions of the latter statute govern the more general provisions of section 1090. (See Code Civ. Proc., § 1859; *Woods* v. *Young* (1991) 53 Cal.3d 315, 325.)

We conclude that a PAC may provide advice to a redevelopment agency where several PAC members own property within the project area. By statute, the advice is limited to (1) adoption of a redevelopment plan, (2) amendment of a redevelopment plan, (3) policy matters that deal with the planning and provision of residential facilities or replacement housing, and (4) other policy matters that affect the residents of the project area.

\* \* \* \* \*