BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE TONY STRICKLAND, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city council enter into a contract with a law firm, of which a city council member is a partner, to represent the city in a lawsuit if the law firm would receive no fees from the city for the services and would agree to turn over to the city any attorney fees that might be awarded in the litigation?
CONCLUSION
A city council may not enter into a contract with a law firm, of which a city council member is a partner, to represent the city in a lawsuit even if the law firm would receive no fees from the city for the services and would agree to turn over to the city any attorney fees that might be awarded in the litigation.
ANALYSIS
Government Code section 1090[1] generally prohibits public officers, while acting in their official capacities, from making contracts in which they are financially interested. We are asked to consider whether this statutory prohibition would preclude a city council from entering into an agreement with a private law firm to represent the city in a specific lawsuit, with the city paying no fees for the legal services, where a senior partner in the law firm is also a member of the city council. We conclude that such an agreement would violate the terms of section 1090.[2]
Section 1090 provides in relevant part:
 ". . . [C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
City councils and their members are plainly covered by this prohibition (see, e.g., Thomson v. Call (1985) 38 Cal.3d 633, 645; City Council v.McKinley (1978) 80 Cal.App.3d 204, 213; 81 Ops.Cal.Atty.Gen. 317, 318 (1998); 46 Ops.Cal.Atty.Gen. 74, 81-83 (1965)), the purpose of which "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. . . ." (Stigall v. City of Taft (1962) 58 Cal.2d 565,569). The statute is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of ImperialBeach v. Bailey (1980) 103 Cal.App.3d 191, 197.) Section 1090
applies to employment contracts, preventing a city council from appointing one of its own members to an employment position. (Finnegan v. Schrader
(2001) 91 Cal.App.4th 572, 583; 81 Ops.Cal.Atty.Gen. 274, 278 (1998).)
Section 1090's prohibition is applicable even when the terms of the proposed contract are demonstrably fair and equitable, or are plainly to the city's advantage (Thomson v. Call, supra, 38 Cal.3d at pp. 646-649), and even when the affected official offers to abstain from participating in any discussions pertaining to the contract (Fraser-Yamor Agency, Inc.v. County of Del Norte (1977) 68 Cal.App.3d 201, 211-212). No matter how carefully or completely a city council member may attempt to avoid participation in the negotiations or execution of the contract, the council member is conclusively presumed to be "making" the contract for purposes of section 1090. (Thomson v. Call, supra, 38 Cal.3d at pp. 645, 649; 76 Ops.Cal.Atty.Gen. 118, 119 (1993).)
Here, it is evident that execution of the proposed retainer agreement for legal services would constitute the making of a contract within the meaning of section 1090. The pivotal issue is whether the council member who is the partner in the law firm would be "financially interested" in the contract for purposes of the statute.
Section 1090 would clearly prohibit the city council from executing the retainer agreement with the council member's law firm if the agreement provided for the payment of legal fees, regardless of the rate or amount charged. (Cf. Terry v. Bender (1956) 143 Cal.App.2d 198
[contract between city and special counsel in which mayor had financial interest]; see also Stigall v. City of Taft, supra, 58 Cal.2d 565
[contract with plumbing business owned by city councilman]; City Councilv. McKinley, supra, 80 Cal.App.3d 204 [contract with architectural firm of which board member was president and stockholder]; People v. Sobel
(1974) 40 Cal.App.3d 1046 [contract with corporation in which city employee and spouse were primary shareholders].) Is the result any different if the law firm receives no direct compensation under the proposed agreement? We believe the result would be the same.
Although section 1090 nowhere specifically defines a "financial interest," case law and our previous opinions indicate that forbidden financial interests may be indirect as well as direct, and may involve financial losses, or the possibility of losses, as well as the prospect of pecuniary gain. (Thomson v. Call, supra, 38 Cal.3d at pp. 645, 651-652; see also Moody v. Shuffleton (1928) 203 Cal. 100, 102-105;People v. Vallerga (1977) 67 Cal.App.3d 847, 867, fn. 5; Terry v.Bender, supra, 143 Cal.App.2d at pp. 207-208; People v. Darby (1952)114 Cal.App.2d 412, 431-432; 85 Ops.Cal.Atty.Gen. 34, 36-38 (2002); 84 Ops.Cal.Atty.Gen. 158, 161-162 (2001).)
Here, a "financial interest" would be present in the form of a possible economic loss to the law firm, on the one hand, and through the prospect of an indirect economic gain, on the other. These possibilities would place the affected council member "in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the public good." (Terry v.Bender, supra, 143 Cal.App.2d at p. 208; see also Thomson v. Call,supra, 38 Cal.3d at p. 652.) What might be in the best interests of the city in conducting the litigation and possibly entering into settlement negotiations may not be in the best interests of the law firm, and what might be in the best interests of the law firm may not be in the best interests of the city.
Under the proposed agreement, the law firm would not receive any legal fees and would bear all litigation expenses normally borne by the client — an arrangement that could give rise to potentially significant cost concerns affecting the economic well being of the firm. In these circumstances, the city's interests and the firm's interests might diverge. For example, the city might wish to litigate swiftly and aggressively, using the firm's best qualified senior attorneys and pursuing an elaborate discovery plan. The law firm, on the other hand, might wish to minimize its costs at the outset of the litigation and spread them over a longer period of time. Also, depending upon such factors as staff salaries, overhead, and the needs of its other clients, the law firm might prefer to assign fewer attorneys to the city's case and engage in less discovery. Depending upon initial court rulings, it might be in the interests of the law firm to enter into settlement negotiations which might not be in the best interests of the city. In these circumstances, the council member in question would likely be unable to devote "absolute loyalty and undivided allegiance" to the city's interests in controlling the conduct of the litigation as required under section 1090. (Stigall v. City of Taft, supra, 58 Cal.2d at p. 569; see also Thomson v. Call, supra, 38 Cal.3d at p. 652.)
The contract could also bring indirect economic gain to the law firm, notwithstanding that it would receive no legal fees from the city. Success in the litigation could be financially advantageous to the law firm and inure to the council member's personal benefit by enhancing the value of his interest in the firm. (See Fraser-Yamor Agency, Inc. v.County of Del Norte, supra, 68 Cal.App.3d at p. 215; Moody v.Shuffleton, supra, 203 Cal. at pp. 102-105; 84 Ops.Cal.Atty.Gen., supra, at p. 161.) Here, we are given that the law firm's name includes the name of the council member, the council member is the firm's senior partner, and the firm is the council member's primary source of income.[3] The law firm might well reap prestige, publicity, and goodwill associated with any success in the lawsuit. The firm would be in a better position to compete for future clients and to recruit qualified staff due to its enhanced goodwill. We believe that the potential for such marketing advantages, coupled with the potential losses should the lawsuit prove unsuccessful, would cause the council member to have a "financial interest" in the proposed contract for purposes of section 1090, preventing him from exercising "absolute loyalty and undivided allegiance" in controlling the litigation. (See Fraser-Yamor Agency, Inc. v. Countyof Del Norte, supra, 68 Cal.App.3d at p. 215; 84 Ops.Cal.Atty.Gen.,supra, at p. 161.)
We thus conclude that a city council may not enter into a contract with a law firm, of which a city council member is a partner, to represent the city in a lawsuit even if the law firm would receive no fees from the city for the services and would agree to turn over to the city any attorney fees that might be awarded in the litigation.[4]
[1] All further statutory references are to the Government Code unless otherwise indicated.
[2] Because we conclude that section 1090 would bar execution of the proposed retainer agreement, we need not address an additional question presented concerning whether the city council member, in representing the city in the lawsuit, would be acting as the city attorney for purposes of the common law rule against holding incompatible public offices.
[3] In sections 1091 and 1091.5, the Legislature has deemed certain interests in contracts to be "remote interests" and "noninterests" that fall outside the strict prohibition of section1090. (See, e.g., 85 Ops.Cal.Atty.Gen., supra, at pp. 36-38.) In the circumstances presented here, these statutory exceptions are not germane to our discussion.
[4] Because of the conclusion reached under the terms of section1090, we need not consider the conflict-of-interest provisions of the Political Reform Act of 1974 (§§ 81000-91014) or the common law doctrine applicable to conflicts of interests (see Clark v. City ofHermosa Beach (1996) 48 Cal.App.4th 1152, 1170-1171).